LANDRY, Judge.
This appeal by the Board of Institutions, State Department of Institutions (Board), is from the decision of the Louisiana Civil Service Commission (Commission) ordering plaintiff, Warren A. Cormier, a classified service employee, reinstated as Superintendent of the Louisiana Correctional and Industrial School at DeQuincy, Louisiana (School), an institution subject to the Board’s supervisory and appointive power. The Commission also ordered full restoration of all rights and privileges of the position. We are in accord with the decision of the Commission and affirm the decree rendered.
Narration of certain background information will afford a clearer understanding of the issues involved.
For some time prior to January 17, 1967, Cormier was employed by the Board as Superintendent of the School. It is conceded his administration of the institution was efficient and proper in every respect. On the above stated date, however, Cormier was demoted by the Board for alleged failure to carry out the Board’s announced policy regarding installation of a Plasmapheresis Program at the School. On January 20, 1967, Cormier was discharged for failure to report for duty at the Women’s Reformatory, St. Gabriel, Louisiana, to which institution he was transferred by the Board. On appeal of his dismissal, Cor-mier was reinstated as the result of a Commission hearing held March 7 and 8, 1967. On the Board’s appeal to this court, the reinstatement was affirmed by decision of this court rendered January 29, 1968. Cormier v. Louisiana State Penitentiary, State Department of Institutions, 206 So.2d 771. On May 12, 1967, Cormier was again dismissed for allegedly inflicting corporal punishment upon inmates of the School and using state property and funds for his own personal use. This latter dismissal was affirmed by the Commission from whose adverse ruling Cormier appealed. This court, in a judgment rendered July 1, *309 1968, reversed the Commission’s affirmation of Cormier’s dismissal and remanded the matter to the Commission for further proceedings. See Cormier v. State Department of Institutions, Louisiana Correctional and Industrial School, 212 So.2d 143. In remanding this matter to the Commission, we directed that body to permit the discharged employee an opportunity to present evidence to prove his contention his dismissal was not predicated upon the charges set forth in the letter of May 12, 1967, but rather was based on improper motives. Upon remand the Commission held appellee’s dismissal was in fact motivated by considerations other than his alleged violation of the School’s anti-corporal punishment rule. In essence the Commission found that George Cockerham, a Board member, utilized “stale” charges of rules violations, which Cockerham and the Board considered inconsequential and immaterial when they occurred, as a ruse to conceal Cormier’s discharge for reasons which made Cormier personally objectionable to Cockerham.
The Board maintains the Commission erred in reinstating plaintiff because (1) the Commission inconsistently held the charges were “stale” notwithstanding its finding that the charges were valid ground for dismissal; (2) procedurally the Commission conducted a hearing on remand which amounted to the granting of a rehearing in violation of the Commission’s own rules, and (3) the record contains no basis for the conclusion that the dismissal in question was motivated by considerations other than the charges of alleged corporal punishment.
The pivotal issue in this matter is not whether the charges of alleged use of corporal punishment were “stale” but whether the dismissal was actually founded on these charges or upon personal and political reasons as contended by appellee. It is well settled that a classified employee may not be discriminated against or subjected to disciplinary action because of political or religious reasons. La. Const. Article 14, Section 15(A) (1) and N(1), (2) and (6); King v. Department of Public Safety, 234 La. 409, 100 So.2d 217; Bonnette v. Louisiana State Penitentiary, etc., 148 So.2d 92.
Appellant’s claim of procedural error on the Commission’s part is without foundation. Rule 13.33 of the Civil Service Rules and Regulations adopted by the Commission provide that no rehearing shall be granted from a final decision of the Commission. In the Cormier Case, reported at 212 So.2d 143, this court expressly remanded this matter to the Commission for the taking of evidence regarding the alleged disguised motives of the Board in ordering Cormier’s discharge which evidence the Commission had declined to hear contrary to the ruling in King, above. The remand and second hearing by the Commission was not a rehearing granted by the Commission on its own authority. The “second” hearing before the Commission was in effect a completion of the first hearing to place before the Commission evidence relevant to an issue properly- raised by the discharged employee.
Findings of fact by the Commission are binding upon the courts on appeal from the Commission’s rulings. La.Const. Article 14, Section 15(O) (1); Higgins v. Louisiana State Penitentiary, Department of Institutions, 245 La. 1009, 162 So.2d 343. However, such factual determinations must be supported by some evidence of record. Louviere v. Pontchartrain Levee Dist., La.App., 199 So.2d 392.
There is no inconsistency between the Commission finding that Cormier was discharged for political reasons and its former ruling that the charges of inflicting corporal punishment was cause for dismissal. The prior ruling was made on an incomplete record. When the matter was remanded, the Commission, after hearing all the testimony, concluded in essence that while the charges were ground for dismissal, the conduct had been condoned and the *310 basis for the discharge was not the rules violation hut political motivation.
The remaining question is simply whether there is any evidence in the record supporting the Commission’s finding that the discharge resulted from prohibited political motivation. Suire v. Louisiana State Board of Cosmetology, La.App., 224 So.2d 7.
Cormier testified that his relationship with Cockerham remained cordial until Cormier declined certain requests made by Cockerham. The friendship began to wane when Cormier refused Cockerham’s request for a two-way radio for Cockerham’s personally owned automobile at the School’s expense. Cormier also testified that he declined Cockerham’s requests for meat and vegetables from the School’s larder. In addition, Cormier testified he refused to paint and repair Cockerham’s personally owned truck using the School’s materials and labor. Cormier stated that when the incidents of corporal punishment arose, Cockerham was fully apprised thereof. The clear import of Cormier’s testimony is that Cockerham assured Cormier the incidents were of no particular consequence and that no disciplinary action would result therefrom. He also stated it was clear to him that the “old” charges were revived by Cockerham because of his, Cormier’s repeated refusal to accede to demands which Cormier considered illegal and unethical.
Mr. Cockerham testified that he was personally opposed to Cormier’s employment at the School. He conceded he voted to oust Cormier. Cockerham also acknowledged that the Board gave considerable weight to his recommendations regarding the affairs of the School. Cockerham denied making any requests of the nature detailed by Cormier. He did, however, acknowledge that he had requested a two-way radio for his personal car from former Director of Institutions, Wingate White. He admitted that though aware of the incidents involving certain inmates, he never raised them at a sub-committee meeting.
Leroy Cole, former inmate of the School, testified he was present in a servile capacity at a fish fry given at the School in June, 1965. Cole also stated that when the affair was ended, Cockerham drove him home and en route Cockerham expressed displeasure at Cormier’s refusal to do as told. Cole stated further that Cock-erham also clearly indicated his intention to have Cormier dismissed. Cockerham denied Cole’s testimony in its entirety.
Martin B. Cox, Building Maintenance Superintendent at the School, a hunting companion and long time acquaintance of Cockerham, verified Cole’s testimony that Cockerham drove Cole home from the fish fry mentioned by Cole. Mr. Cox also related a discussion with Cockerham on the night of April 28, 1966, the occasion being a supper at a rodeo arena near DeQuincy. According to Cox, Cockerham then expressed resentment at Cormier’s refusal to have Cockerham’s truck painted at the institution. Cox stated Cockerham told him “Cormier has got to go” and that “if you don’t watch out, you’ll go too.”
Earl Stark, Merchant of DeQuincy, Louisiana, an acquaintance of Cockerham, testified he was present on the night of April 28, 1966, when the conversation between Cox and Cockerham transpired. Stark also stated that Cockerham told Cox “Cormier had to go” and that if Cox didn’t go along with him, Cox was going to go also as would Captain Odegar (the School’s Chief Enforcement Officer) and anyone else who did not cooperate with him.
Mr. Glyn Gaspard, Merchant, testified that at the fish fry in June, 1965, he heard Cormier relate to Cockerham the details of one of the incidents involving corporal punishment upon an inmate.
Mrs. Frank Jameson, widow of Cocker-ham’s predecessor on the Board, testified she and her late husband were long time *311 friends of Cockerham. She also stated that Cockerham showed her a list of grievances against Cormier which Cockerham was going to present at a Board meeting to be held July 13, 1966. She also testified Cockerham stated on this occasion that Cormier had to learn that he, Cockerham, was boss. Mrs. Jameson could remember merely that the list shown her contained an item referring to alleged misappropriation of state funds. In addition, Mrs. Jameson testified Cockerham admitted to her that Cormier was a good Superintendent and efficiently administered the affairs of the institution.
Roland Horn, a former inmate, presently a newspaper reporter, testified that he was on parole from the institution when summoned to testify on Cormier’s behalf at the first hearing before the Commission. He stated he informed Cockerham of the summons as he was apprehensive of having his parole revoked and wished Cockerham’s advice as to what he should do. In effect, Horn stated that Cockerham suggested Horn’s parole status might be affected if Horn testified for Cormier. He also testified that as a result of his conversation with Cockerham, he advised Cormier he could not testify in the latter’s behalf. Horn also explained that he was free to testify at the second hearing because his parole had expired in the meantime and he was no longer subject to the possibility of parole revocation.
Mr. Cockerham admitted having been contacted by Horn. After some equivocation, his version of the conversation was given in the following testimony:
A: “Well, all he — he asked me, he said, now, you know that I’m on parole, course I knew this, and he told me that he was calling me for — he wanted some advice from me. Now I heard him awhile ago make his statement but the only thing that I told Mr. Horn was that if I were .him — or he — I wouldn’t do anything that would just — would do anything to my parole. Just tell the truth. That’s all I told the man.” Commission Docket No. 788, p. 293.
The Board met July 13, 1966, in Baton Rouge, on a call issued by Cockerham. Thereafter on July 26, 1966, Cormier received a letter from the Director of Institutions, Wingate White, emphasizing the importance of Cormier maintaining good relations with the Board members and cautioning that it was “absolutely imperative that Cormier have good relationships with the members of the Board.”
It is worthy of note that Cormier was first dismissed in January, 1967, by letter from Director White. The second discharge occurred May 12, 1967, by letter from General David Wade, Director. It is conceded that only the Board has the power of dismissal in this instance.
General Wade testified he assumed the position of Director on May 1, 1967. He stated he had no knowledge of the affairs at the School except that imparted by his predecessor, Wingate White, who worked with Cockerham’s sub-committee in effecting Cormier’s prior dismissal in January, 1967. General Wade also stated the discharge of May 12, 1967, was by the Board. Wade explained that the dismissal was based on a three hour investigation conducted by him the previous afternoon. He acknowledged he did not speak with any of the alleged victims and that a letter of dismissal was prepared before the investigation was made.
It is conceded Cormier was never consulted concerning the charges of corporal punishment, neither was Captain Odegar who was present in each instance. It is undisputed that one Van Winkle, an employee of the School who participated in one instance of corporal punishment, is still employed at the Institution and has been promoted as a result of Cormier’s dismissal. Moreover, a Mr. Abdalla, employee of the School, who testified on Cormier’s behalf, was demoted in rank, and *312 Captain Odegar dismissed. The Commission has, however, ordered both Abdalla and Odegar reinstated to their former positions. See Commission Docket No. 788, Page 57.
Based on evidence which supports the finding, the Commission noted that Mr. Cockerham was Chairman of a Board subcommittee charged with responsibility for supervising the School. The Commission likewise properly found that Cockerham dominated the sub-committee and that the Board itself usually adopted Cockerham’s recommendations as Chairman of this particular sub-committee. The Commission also concluded Cormier’s dismissal was not motivated by his infliction of corporal punishment upon inmates of the School. Rather the Commission found the Board, through Cockerham, had full knowledge of these incidents and initially considered them insufficient ground for dismissal in view of Cormier’s efficient administration of the School. The Commission also found that the charges relating to corporal punishment were condoned by the Board but resurrected upon Cockerham’s insistence because of Cormier’s refusal to accede to Cockerham’s improper demands and requests.
We agree with the Commission that under the circumstances attending this case, the charges relating to corporal punishment are no longer actionable. We make it clear, however, that we do not mean charges of improper conduct concealed through design, artifice or in collaboration or collusion with former Boards, superiors or employers, may never be ground for disciplinary action or dismissal by subsequent Boards, superiors or employers who bare concealed wrongdoing on the part of a classified employee. Neither the Commission nor the courts can condone improper or illegal conduct deliberately and willfully hidden to the interest or advantage of its perpetrator.
Here, however, there was no concealment of the conduct in question. It was disclosed and made known to the employer whose immediate reaction was to assure the employee the conduct did not constitute cause for dismissal. For the employer to subsequently use the condoned action as a subterfuge for dismissal based on political motives constitutes a prohibited discrimination against the employee.
The judgment of the Commission is affirmed. All costs of these proceedings assessable by law to be paid by the Board-appellant.
Affirmed.