ELLIS, Judge.
This is an appeal by Lt. Col. Ben F. Ra-gusa from a decision of the State Civil Service Commission, which affirmed his dismissal from his position as Assistant Superintendent of the Division of State Police. The letter of dismissal, dated April 25, 1969, and signed by Lt. Gen. David Wade, Director of the Department of Public Safety, the appointing authority, detailed eight separate grounds for the dismissal. It recites that, although the investigation into Col. Ragusa’s conduct was initiated because of unfavorable publicity concerning his activities, the dismissal itself was based on the specific grounds alleged.
The first of the charges was withdrawn at the hearing before the Commission, and the Commission found that three others were either disproved or formed no basis for disciplinary action.
Charge No. 3, which was found not to have been disproved, reads as follows:
“During the month of September, 1965, and possibly on other occasions, A-l Equipment Rentals, Inc., a corporation in which you owned an undetermined but considerable interest, utilized the services of E. J. Simoneaux, then a sergeant, Division of State Police, during Simo-neaux’s regular working hours, for the purpose of repairing trucks and other equipment owned by A-l Equipment Rentals, Inc. In your position as the president of said corporation, and in your position as a colonel of the Division of State Police, you either knew or should have known that this corporation was utilizing the services of Sergeant Simoneaux during regular working hours.
“It is believed that you received a salary from A-l Equipment Rentals, Inc., during the period from September, 1965 until you disposed of your stock in this corporation, without previously obtaining permission from the Director or Superintendent, in violation of Section 11(14) of the State Police Manual (General Order No. 5).”
Charges Nos. 5, 6, and 7 allege that at various times between May 17, 1959, and September 6, 1963, Col. Ragusa’s daughter, Barbara' S. Ragusa, was carried on the payrolls of three different pipeline construction companies, which required permits for overweight and overwidth loads from the State Police, and that Col. Ragu-sa arranged for his daughter to be so employed. It is further alleged that Miss Ra-gusa was, at all times during the said period, either a full time student or a full time employee of other concerns.
Under the provisions of Article XIV, § 15(N) (1) of the Constitution of 1921, the burden of proof on appeal, as to facts, is on the employee. Article XIV, § 15(0) (1) provides that the findings of fact by the Commission are final. Our courts have interpreted the latter provision to mean that, so long as there is any evidence in the record to support the conclusions reached by the Commission as to the facts, such findings will not be disturbed by us on appeal.
The Commission in this case has concluded that Col. Ragusa has not borne the burden of disproving the allegations. Our review of the record convinces us that there is evidence in the record to justify this conclusion, and we are without authority to disturb it. Neither do we question the conclusion that, standing alone, Col. Ragusa’s conduct in the above respects is. sufficient, as a matter of law, to justify his dismissal, even though it does not appear that Col. Ragusa ever gave any advantage to the various other parties involved in the offenses, or that he in any way was deficient in the performance of his official duties.
*195 We are presented with 22 specifications of error by the appellant. Of these, only two merit consideration by us, the others relating to alleged technical errors in the proceedings before the commission, and to legal and factual conclusions, which are disposed of by the findings hereinabove set forth. The first is that the real reason for Col. Ragusa’s dismissal was the adverse publicity received by him and by the Division of State Police, and not the conduct alleged in the letter of dismissal. The second is that General Burbank, who was General Wade’s predecessor, knew of appellant’s misconduct, and, after discussing it with the Governor, decided that disciplinary action was not indicated. It is contended that misconduct, once condoned by the appointing authority, cannot be subsequently used as a basis for disciplinary action.
As to the first point, we refer again to the letter of dismissal, which sets forth the fact that the publicity was the thing which led to the investigation of Col. Ragusa’s conduct, but that the conduct itself is the basis for the disciplinary action. There is nothing in the record to refute this assertion.
On the second point, we are faced for the first time with a situation in which an appointing authority has made a conscious decision that certain conduct does not warrant disciplinary action, and a subsequent occupant of the same position has decided that the same conduct is grounds for dismissal.
In other cases which have involved the use of so-called “stale” charges, such as Cormier v. Board of Institutions, State Dept. of Inst., 230 So.2d 307 (La.App. 1 Cir.1969), the “staleness” of the charges has been used as evidence of the fact that the real reason for disciplinary action was not the reason set forth in the letter of dismissal. In that case, this court held that although the conduct complained of was sufficient grounds for dismissal, it had been “condoned, and the basis for the discharge was not the rules violation but political motivation.”
In other words, “staleness” alone is no reason for disregarding a charge, so long as it forms the real basis for the proposed disciplinary action.
In the Cormier case, supra, we agreed with the Commission that condoned charges, resurrected for personal or political motives, could not form the basis for disciplinary action. We also said:
“We make it clear, however, that we do not mean charges of improper conduct concealed through design, artifice or in collaboration or collusion with former Boards, superiors or employers, may never be grounds for disciplinary action or dismissal by subsequent Boards, superiors or employers who bare concealed wrongdoing on the part of a classified employee.”
In this case, we have found that the charges contained in the letter of dismissal were the real motive for the disciplinary action. We have also found that the same charges had been condoned by the immediate predecessor of the appointing authority some months previously.
There is nowhere in the record any evidence that either General Burbank or General Wade acted in bad faith in the matter. General Burbank went so far as to consult with his own appointing authority before reaching a decision. There is no evidence of collusion between Col. Ragusa and General Burbank, although General Burbank did testify that there was some question as to Burbank’s wife’s employment in 1957 or 1958.
There is no hard and fast rule to be applied in cases of this type. We recognize that there must be a point at which an appointing authority must take action relative to an employee’s misconduct or else be precluded from so doing. But can it be said that an appointing authority should be forced to keep an undesirable employee because his predecessor made a mistake in *196 judgment in evaluating the employee’s conduct? We think these questions can best be answered in the light of the circumstances surrounding each case.
In this case, because of the seriousness of the misconduct found by the Commission, the high office held by Col. Ragu-sa, and the short period of time which elapsed between General Burbank’s decision to take no action in January, 1969, and the dismissal by General Wade in April, 1969, we do not think General Wade exceeded his authority when he dismissed Col. Ragusa. Although the penalty imposed seems harsh, in view of Col. Ragu-sa’s long service and excellent record, we cannot say that there is no relationship between the offenses charged and the efficient operation of the State Police. Under those circumstances, the disciplinary action taken lies within the limits of the discretion of the appointing authority and the Commission.
The opinion of the Civil Service Commission is, therefore, affirmed, at appellant’s cost.
Affirmed.