358 So.2d 975 (1978)
Joel MESSER
v.
DEPARTMENT OF CORRECTIONS, LOUISIANA STATE PENITENTIARY.
No. 11318.
Court of Appeal of Louisiana, First Circuit.
February 13, 1978.
*976 Phillip T. Hager, New Orleans, for appellant Joel Messer.
Thomas H. Matuschka, Baton Rouge, for appellee.
Before LANDRY, SARTAIN and ELLIS, JJ.
ELLIS, Judge.
Joel Messer was fired from his position as Food Service Manager III at Louisiana State Penitentiary at Angola effective the close of business August 4, 1975. His appeal to the Civil Service Commission was denied on September 27, 1976, and he has appealed to this Court.
The record shows that Mr. Messer was first employed on December 13, 1965, as Food Service Manager at the Penitentiary. The position was reallocated to Cafeteria Manager III on August 1, 1966, and to Corrections Food Manager III on August 1, 1969, without any substantial change in his duties. The latest job description, dated February 1, 1971, and signed by Mr. Messer, is as follows:
 "This position is located at the Louisiana
 State Penitentiary and involves responsibilities
 under the general supervision of the
 Ass't. Business Manager, for managing the
 prison culinary department. This entails
 planning, directing, and controlling all operations
 necessary to the preparation and
 service of approximately 12,000 meals per
 day.
 Specific duties and responsibilities are as
 follows:
"15% Preparing menus and special diets for approximately
 4,000 inmates and free personnel
 with consideration given to such factors
 as budgetary limitations, availability of
 farm grown produce, and nutritional requirements
 of inmates performing rather
 strenuous tasks.
"50% Coordinating and directing the work of Corrections
 Stewards III who are responsible
 for seeing that inmates are performing their
 food preparation and service duties in a
 sanitary, efficient, and economical manner.
"10% Revising and evaluating portion standards
 for all goods served throughout the prison
 complex, making studies of the food conservation
 program, and establishing new procedures
 and policies to minimize waste.
"10% Supervising the requisitioning of food supplies,
 taking into consideration such factors
 as current costs, budget allotments, inventories,
 ordering and shipping time, adopted
 portion standards and number of meals
 served, approving these requisitions before
 submission to the business office for purchasing,
 and supervising the receipt and
 inspections indicated on the purchase orders.
"5% Conducting studies to determine the capabilities
 and adequacy of all food service equipment
 and facilities, arranging for the purchase
 of new equipment and building materials,
 and inspecting and giving final approval
 for equipment and materials received
 before payment is made.
"5% Assisting in preparing the annual budget by
 providing itemized statements of estimated
 expenditures for food, supplies, and equipment,
 supervising the maintenance of a perpetual
 inventory of food and supplies, listing
 the cost and amount of each item received,
 used, and on hand, and preparing a
 report illustrating all culinary expenditures
 in detail.
"5% Performing related work as assigned."
On June 23, 1975, there was a purported food poisoning incident at the Penitentiary. The then Warden told Colonel Jeff D.
*977 Smith, Jr., the Business Manager at Angola and Mr. Messer's immediate supervisor, to keep Mr. Messer away from the food service operation. On the same day, the Warden issued a memorandum putting a Captain Mayeaux in charge of the food operation.
On June 26, 1975, the Warden told Colonel Smith that he did not care what was done with Mr. Messer, but he was not going to let him back in the kitchen operation any more. Colonel Smith quoted the Warden as saying that "he just wasn't going to have any more food poisoning riot or potential riot." On the same day, Mr. Messer met with Colonel Smith. At that time, Colonel Smith offered Mr. Messer the opportunity of accepting a demotion for the period of time necessary to enable him to retire. Mr. Messer refused and asked if he could go on leave instead, and was granted four weeks annual leave, beginning June 27, 1975.
On July 14, 1975, while Mr. Messer was on leave, an inspection of the prison was made by the Division of Health of the State Department of Health and Human Resources, which made a report of its findings under date of July 16, 1975. On July 25, 1975, a letter discharging Mr. Messer from his position was directed to him by Elayn Hunt, Director of the Department of Corrections, which reads, in part, as follows:
"You were given an appointment as Food Service Manager at the Louisiana State Penitentiary on December 13, 1965. Through the orderly review of positions within the Department your title underwent several changes until your present title was adopted on August 1, 1969, Corrections Food Manager III.
"This title gives you full authority and responsibility over preparation of food at the Louisiana State Penitentiary. The position entails not only menu preparation and requisitioning of food, but supervision of the preparation of food to determine that this preparation is done in accordance with established health and sanitary standards.
"In your application submitted to us and dated July 28, 1966, you indicated `I supervised the preparation of all meals, directly or indirectly through the staff employees. The meals are prepared in an efficient and sanitary manner, and served in cafeteria style'.
"As a result of the report received from the Division of Health, LHHRA, which was made on July 14, 1975, it has become necessary to review your work record."
There then followed a list of 14 separate incidents, five of which related to the findings made in the July 14, 1975, inspection, and the remainder of which detail a series of incidents which allegedly took place between 1970 and 1974. The letter then concludes as follows:
"This review of your work record, which was directly caused by receipt of the report of the health inspection, dated July 16, 1975, and which reported an inspection of your kitchen on July 14, 1975, indicates that the several supervisory officials at the penitentiary, including Warden Henderson, Warden Hoyle, the Prison Business Administrator and Assistant Administrator, have worked with you over a long period of time in an attempt to improve your effectiveness and performance of duty. Frankly, it is surprising that their patience has not been exhausted long since.
"This entire work record indicates a continuing series of problems concerning effective performance on your part at the Louisiana State Penitentiary.
"Because of the above cited official inspection report indicating the several deficiencies in your area of responsibility and the comprehensive review of your work record as shown in Paragraphs A through N, and attached copies of memoranda and reports, this will serve to inform you that you are being separated from your position as Corrections Food Service Manager III at the Louisiana State Penitentiary effective the close of business August 4, 1975."
Mr. Messer's appeal to the Commission is worded in pertinent part as follows:
"The basis of his appeal is that the charges made against him are not true.

*978 We will produce documentary evidence at a hearing to refute the charges contained in the letter from Ms. Hunt. The relief we are seeking is re-instatement of Mr. Messer's former position with all back pay as well as other emoluments of his office."
After the hearing the Commission rendered its opinion, denying the appeal. It made its findings of fact in a general rather than a specific fashion including a number of findings of facts not alleged as a cause of Mr. Messer's discharge. The opinion concludes as follows:
"It was appellant's failure to exercise these managerial responsibilities which led to his discharge. The record is replete with repeated instances of this failure, and, as the Director of the Department of Corrections noted in the letter of discharge:
'. . . the several supervisory officials at the penitentiary including Warden Henderson, Warden Hoyle, the Prison Business Administrator and Assistant Administrator, have worked with you over a long period of time in an attempt to improve your effectiveness and performance of duty. Frankly, it is surprising that their patience has not been exhausted long since.'
"The letter of discharge contained a lengthy recitation of major problems of sanitation noted and reported upon by an inspector from the Department of Health on July 14, 1975. Appellant insists that he cannot be held responsible for any of those deficiencies for the reason that he was on annual leave at the time the inspection was made, and he had been on annual leave for approximately three weeks prior to the date of the inspection. Appellant had, in fact, been relieved of his duties as manager of food preparation and service by a memorandum issued by the Warden on June 23.
"Even a casual reading of the deficiencies by the inspector from the Department of Health reveals that a substantial number of these deficiencies had not come into being between the time that appellant went on annual leave and the inspection was done. Certainly some of these could have been of recent originsuch as pools of water being on the floor; dirty clothing being strewn about in various areas but the ones dealing with the presence of filth in various places had, obviously, taken a much longer time to develop.
"The Commission has determined, from an examination of all of the evidence, that appellant failed to possess, or exercise, the requisite degree of managerial skill to overcome the difficulties with which he was faced and to do that for which he was employedprepare and serve palatable food under sanitary conditions. To be sure there were difficulties. There were divided areas of responsibility in the maintenance of sanitation; there were divided areas of responsibility in the operation of the "satellite" kitchens in the outlying "camps" of the penal institution; there were problems with the maintenance of equipment, particularly the equipment for the cold storage of food; but the State of Louisiana was entitled to 100% effort on the part of appellant to overcome these difficulties to the greatest extent possible and to have appellant accomplish that for which he was employed and adequately paid, i. e., to obtain, store, prepare and serve palatable food under sanitary conditions. Undoubtedly the accomplishment of this objective, under the conditions existing at the penitentiary, requires the exercise of considerable managerial skill. Appellant was unwilling, or unable, to demonstrate this skill on a sustained basis."
We think it clear from a review of the facts above set forth, that the various grounds alleged for the discharge of Mr. Messer do not constitute the real basis for that action. The decision to remove Mr. Messer from his position was made over three weeks before the inspection which was allegedly the cause of the review of his record. All of the other instances of substandard conduct with which he was charged had already been condoned by the appointing authority, or had formed the basis for other, less serious disciplinary action. *979 The record shows that throughout his career at Angola, Mr. Messer had received satisfactory service ratings, including the periods during which the various acts with which he was charged took place.
In addition, although the Civil Service Commission found that it was Mr. Messer's "failure to exercise these managerial responsibilities which led to his discharge", we cannot find that lack of managerial ability is alleged as the basis of his discharge. The letter of discharge specifically states that he is being discharged "because of the above cited official inspection report indicating the several deficiencies in your area of responsibility and the comprehensive review of your work record . . ." Although a lack of managerial ability may be inferred from the letters, the law requires that the cause of disciplinary action be specifically set forth in writing.
However, despite the rather obvious defects in the letter of dismissal, Mr. Messer chose to base his defense on the allegation that the charges against him were untrue.
The first four of these charges relate to deficiencies noted in the report of the July 14, 1975, inspection. Although the report was identified by one of the witnesses for the appointing authority, there was no testimony by any of the persons who made the inspection. The report is therefore, hearsay, and not competent evidence. Although, under the Administrative Procedures Act, the Civil Service Commission is not bound by the technical rules of evidence, only legally competent evidence will be considered by us in our review of the case. Michel v. Dept. of Pub. Saf. Al. Bev. Con. Bd., 341 So.2d 1161 (La.App. 1st Cir. 1976); R.S. 49:956. Since there is no competent evidence to support these four charges, they are not proven by the appointing authority.
The next two charges made against Mr. Messer relate to some of the circumstances surrounding his discharge, but contain no allegations of misconduct.
The next two allegations are to the effect that his regular step increase in pay was held up for two 90-day periods: the first because of a breakfast meal on September 28, 1973, for which proper supplies were not available and which was badly prepared; and the second because 1,170 pounds of frankfurters were allowed to spoil. These two charges are supported by the evidence, although it appears that the refrigerator room in which the frankfurters were stored was not properly insulated and repairs requested by Mr. Messer had not been done because of lack of funds. It also appears from these two charges that Mr. Messer has already been disciplined for both of these offenses.
The next charge relates to an inspection made on December 13, 1973, during which unsanitary conditions were found. The evidence supports the report of the inspection. However, most of the substandard conditions existed in area in which Mr. Messer was not primarily responsible for cleanliness and sanitation.
The next charge relates to the September 23, 1973, breakfast meal, discussed above, for which Mr. Messer has already been disciplined.
The next charge states that Mr. Messer made excess vegetable purchases during the month of June, 1972. Mr. Messer's only defense to this charge is that his requisition had been approved by the Business Manager.
The next charge relates to a meat freezer inventory which was to have been made on June 30, 1972, but which was not made until July 9, 1972. The charge alleges that the inventory was grossly in error, but there is no proof of this fact. The only evidence relative thereto is that the inventory was made late, which is not denied by Mr. Messer.
The next charge is that the dining room ran out of bread on February 23, 1970. There is no evidence to substantiate this charge.
The final charge relates to two instances in 1970, when cash received by Mr. Messer was not turned in with a cash collection sheet. Without going into detail, the evidence *980 shows that the money was, in fact, turned in, although late in one case.
It therefore appears that the appointing authority has proven only four of the many charges made against Mr. Messer, and in two of these cases there are extenuating circumstances. Mr. Messer has already been disciplined or reprimanded in all cases. In view of the failure to prove the majority of the charges made, and of the fact that, throughout his ten-year career, Mr. Messer never received an unsatisfactory service rating, even though the greater part of the charges made against him took place during that period, we are of the opinion that grounds for his discharge have not been shown.
The opinion of the Civil Service Commission, affirming Mr. Messer's discharge is therefore set aside, and he is ordered reinstated in his position as Corrections Food Manager III as of August 4, 1975, with full pay and emoluments of his position. The appointing authority shall pay all costs for which it may be legally taxed.
REVERSED AND RENDERED.