428 So.2d 515 (1983)
Michael W. LINTON, Plaintiff-Appellant,
v.
BOSSIER CITY MUNICIPAL FIRE AND POLICE CIVIL SERVICE BOARD, Defendant-Appellee.
No. 15196-CA.
Court of Appeal of Louisiana, Second Circuit.
February 22, 1983.
Rehearing Denied April 7, 1983.
Fayard & Snell by A.R. Snell, Bossier City, for plaintiff-appellant.
DeLaune, Blondeau & Hall by Harvey P. DeLaune, Bossier City, for defendant-appellee.
Before JASPER E. JONES, SEXTON and NORRIS, JJ.
SEXTON, Judge.
Appellant was fired from his job as a Bossier City policeman by the Bossier Mayor, and appealed his dismissal to the Bossier City Municipal Fire and Police Civil Service Board (Board) which affirmed the appellant's *516 firing. Appellant subsequently appealed the Board's decision to the District Court, which upheld the Board's affirmance of his discharge. We concur with the Bossier Mayor, the Civil Service Board and the District Court and find that appellant was fired for legal cause. We therefore affirm.
Appellant in the instant proceeding is Michael W. Linton, who joined the Bossier City Police Department in 1973, and was terminated from his position as a Bossier City policeman on November 11, 1977, by the Mayor of Bossier City, Marvin E. Anding. Appellant appealed his dismissal to the Board, and by a written decision rendered March 17, 1978, the Board upheld Mr. Linton's discharge and denied his reinstatement to the force. Appellant appealed the Board's affirmance of his dismissal to the Twenty-Sixth Judicial District Court of Bossier Parish, which upheld the Board's affirmance in an opinion submitted July 24, 1980.
Appellant subsequently appealed the District Court's affirmance to the Second Circuit Court of Appeals, which reversed the trial court's judgment on wholly procedural grounds. The Second Circuit found that the Civil Service Boardwhich considered Mr. Linton's appeal from his dismissalhad affirmed his discharge by a legally insufficient vote, with two members favoring reinstatement and two members voting to uphold the Mayor's dismissal of Mr. Linton.[1] The Court accordingly remanded Mr. Linton's civil service appeal, mandating that he be given a rehearing by the Board in conformance with the applicable statutory requirements. Linton v. Bossier City Municipal Fire & Police Civil Service Board, 402 So.2d 716 (La.App.2d Cir.1981).
On remand from the Second Circuit, the Board on December 7, 1981, once again affirmed Mr. Linton's dismissal from the Bossier City Police Departmentthis time by a legally sufficient vote of three to two. Mr. Linton appealed this adverse administrative determination to the Twenty-Sixth Judicial District Court, whichon July 21, 1982again upheld the Board's affirmance of Mr. Linton's dismissal.
Constitutional and statutory provisions clearly delineate the substantive grounds which justify the dismissal of civil service employees, and the procedural rights of civil employees threatened by such a dismissal. LSA-R.S. 33:2500 provides that civil employees may be discharged or subjected to disciplinary sanctions for any of fifteen statutorily stipulated reasons, including the following:
"(1) Unwillingness or failure to perform the duties of [one's] position in a satisfactory manner.
....
(3) The commission or omission of any act to the prejudice of the departmental service or contrary to the public interest or policy.
(4) Insubordination.
(5) Conduct of a discourteous or wantonly offensive nature toward the public, any municipal officer or employee; and, any dishonest, disgraceful, or immoral conduct.
....
(15) Any other act or failure to act which the board deems sufficient to show the offender to be an unsuitable or unfit person to be employed in the respective service."[2]
*517 These statutory grounds for the removal of a civil employee have been juridically construed to describe any conduct on the part of the public employee which substantially detracts from, or impairs the efficiency of, the public service department by which the employee is employed. Dumez v. Houma Municipal Fire & Police Civil Service Board, 408 So.2d 403 (La.App. 1st Cir. 1981); Dept. of Public Safety v. Rigby, 401 So.2d 1017 (La.App. 1st Cir.1981); McIntosh v. Monroe Municipal Fire and Police Civil Service Board, 389 So.2d 410 (La.App. 2d Cir.1980); Legros v. Dept. of Public Safety, 364 So.2d 162 (La.App. 1st Cir.1978).
The civil service employee disciplined or dismissed is statutorily entitled to a written statement of reasons explaining the disciplinary action taken against him. La. Const. Art. 10, § 8(A) (1974). LSA-R.S. 33:2500(D). Moreover, a civil service employee discharged by the appointing authority may appeal his dismissal to the Civil Service Board within 15 days of such dismissal. LSA-R.S. 33:2501. The board must hold a hearing within 30 days of the receipt of the employee's written request for an appeal. Id. Such hearings are to be informally conducted, and both the employee and the appointing authority must be *518 allowed to appear with or without counsel to present evidence concerning the justification for the dismissal. Id.
LSA-R.S. 33:2501 sets out the standard of administrative review that Civil Service Boards are to employ in scrutinizing disciplinary actions taken by the appointing authority against civil servants. The disciplinary action is to be upheld if it is taken in good faith and for one of the fifteen causes delineated in LSA-R.S. 33:2500 as grounds for disciplinary action.[3] The disciplinary action is to be vacated by the Civil Service Board if it is not established that the action of the appointing authority was taken in good faith and for a cause enunciated in LSA-R.S. 33:2500.
On appeal to the Civil Service Board, "The burden of proof ... as to the facts, shall be on the appointing authority," La. Const. Art. 10, § 8(A) (1974), and the board may only affirm the appointing authority's disciplinary action "if the evidence is conclusive." LSA-R.S. 33:2501. However, the appointing authority is not required to prove its case beyond a reasonable doubt, but merely by a preponderance. Newman v. Dept. of Fire, 413 So.2d 225 (La.App. 4th Cir.1982); Herbert v. Dept. of Police, 362 So.2d 1190 (La.App. 4th Cir.1978).
Any employee or appointing authority dissatisfied with the determination of the Board, may appeal its decree directly to the district "court of original and unlimited jurisdiction in civil suits in the parish wherein the board is domiciled." LSA-R.S. 33:2501. This statutory right of judicial review, while granting to an employee or appointing authority the right to an appeal, does not require a trial de novo. Bland v. City of Houma, 264 So.2d 729 (La.App. 1st Cir.1972). The decisional standard employed by the District Court is the same as that employed by the Civil Service Board: the appointing authority's disciplinary action will not be disturbed if taken in good faith and for a cause set forth in LSA-R.S. 33:2500. LSA-R.S. 33:2501. However, the courts employ a deferential approach in reviewing administrative determinations of the Civil Service Board. Thus, the Board's factual findings will be upheld if there is any evidence to support them,[4] and will not be judicially overturned unless manifestly erroneous[5] or arbitrary and capricious.[6]
We have applied the statutory criteria of LSA-R.S. 33:2500which states the grounds for disciplinary action against public employeesto the facts of our case. We have similarly applied the statutory criteria of LSA-R.S. 33:2501, which states that disciplinary actions are to be upheld if taken in good faith and for a cause set forth by LSA-R.S. 33:2500. We conclude that Michael Linton was legally discharged by Mayor Anding of Bossier City.
We note that Mr. Linton committed several acts while employed by the Bossier City Police Department, any one of which, when singly considered, undermined his fitness to be a police officer and justified his discharge.[7] Considered cumulatively, these acts provide more than an ample basis for finding that Mr. Linton was discharged in good faith for legal cause.
On July 26, 1976, Mr. Linton, while off duty, committed a battery against Marion Collins, a black male approximately 44 years of age. On that date, Mr. Linton was *519 driving north on Hamilton Road in Bossier City, and Mr. Collins was driving west on Scott Street towards the same intersection. Both parties arrived at the intersection at the same time. While Mr. Linton was stopped at the intersection and still on Hamilton Road, Mr. Collins attempted to turn left off Scott on to Hamilton Road and in the process of making this turn angled in front of Mr. Linton. Although it appears that Mr. Collins had a green light and thus the right of way, Mr. Linton cursed at Mr. Collins through the open window of Mr. Linton's car, berating him for cutting too closely to Mr. Linton's automobile. Mr. Collins then stopped his vehicle. Mr. Linton got out of his car and approached Mr. Collins' vehicle. Mr. Collins lost his balance and fell from his vehicle when Mr. Linton suddenly opened the door of Mr. Collins' vehicle. Mr. Linton then struck Mr. Collins in the face. Mr. Collins did not, prior or subsequent to this blow, strike or attempt to strike Mr. Linton. Although Mr. Linton denied striking Mr. Collins, this is contrary to the testimony of Mr. Collins, as well as the testimony of two eye-witnesses who testified that, while Mr. Collins did not strike Mr. Linton, Mr. Linton nevertheless struck Mr. Collins. Mr. Linton's denial is furthermore inconsistent with the uncontradicted report that Mr. Collins appeared at the police station shortly after the incident to file charges against Mr. Linton, holding a cloth to his profusely bleeding nose.
On October 27, 1976, Mr. Linton used excessive force in arresting Ricardo Jean. On that occasion, Mr. Linton stopped Jean for speeding on Interstate 20. Jean got out of the car in an inebriated condition. Another squad car with two police officers arrived at the scene, and the officers walked to within a few feet of the point where Mr. Linton was attempting to arrest Jean. Mr. Linton instructed Jean to turn around and place his hands on his car. Jean spun around twice, and Mr. Linton forcibly turned Jean back toward Jean's automobile each time. When Jean spun around a third time, Mr. Linton struck him several times. The evidence adduced indicated that it was unnecessary for Mr. Linton to strike Jean to arrest him. It appears that Mr. Linton could have forcibly restrained Jean and placed him in handcuffs without resorting to blows. Mr. Linton is six feet tall and weighs 229 pounds. Standing within a few feet of Mr. Linton and Jean were two other officers, both of whom weighed over 200 pounds. Jean was 5'6", and weighed approximately 135 pounds. As Board member Walter E. Cook succinctly phrased it at the hearing, "we are talking about 650 lbs (sic) of policemen apprehending a 135 lb. drunk." Jean possessed no weapon, made no sudden moves that could have been construed as an attempt to procure one, and made no physically threatening or overt gestures towards the police officers. He did not strike, or attempt to strike, them. Mr. Linton received a 15 day suspension without pay for this incident, when Police Chief William Thornton saw the subject Jean the following day, and observed that Jean was heavily bruised around both eyes and on his rib cage.
On April 5, 1977, Mr. Linton threatened a guest staying at the Scottish Inn Motel in Bossier City. Mr. Linton stationed himself outside the man's room, shouting vulgar curses at him. When the man came to the door, Mr. Linton threatened him with a .44 magnum revolver. There was some evidence that Mr. Linton pointed his gun at the guest and cocked it, although this particular fact was not clearly established. Mr. Linton testified that he was angry at the man for "trying to make advances toward" his fiancee. Mr. Linton later discovered that the man was not in fact making such advances. Mr. Linton was suspended 30 days without pay for this incident.
Mr. Linton was dismissed after an event which occurred while Mr. Linton was still suspended because of the Scottish Inn incident. On April 29, 1977, Mr. Linton was seen driving at an excessive speed on Highway 80. The two police officers followed Mr. Linton's vehicle and observed an apparent drag race between Mr. Linton and another man driving a Ford Mustang. The officers then observed the Mustang closely tailing Mr. Linton's vehicle. The driver of *520 the Mustang was accelerating, coming within inches of Mr. Linton's bumper, slamming on his brakes and increasing the distance between the two vehicles, and then repeating the process by "lunging" at the rear bumper of Linton's car. After police officers stopped both vehicles, Mr. Linton disembarked from his automobile, approached the driver of the other car, and reportedly yelled "I'll blow your m_ _ _ _ _ f_ _ _ _ _ _ windshield out if you get on my bumper that close again." One of the officers attempted to escort Mr. Linton back to his vehicle, and Mr. Linton told him to "take [his] G_ _ D _ _ _ _ _ hands off him." Mr. Linton walked back to his car before he returned to within a foot of the other driver and shouted at him to get out of Bossier City.
The record is replete with references to the fact that Mr. Linton is popular with his fellow officers and has been commended by his superiors for diligent and dedicated work. However, Mr. Linton has struck one man for driving too close to his car; has used excessive force in arresting another; has threatened a third with a magnum revolver; and has threatened to blow out a fourth man's windshield.
In light of these unfortunate events, we conclude that the statutory grounds for dismissal stated in LSA-R.S. 33:2500have been satisfied. Mr. Linton's past history bespeaks a failure to discharge his duties in a satisfactory manner, actions contrary to the public interest, insubordination to the superiors who have attempted to rectify his behavior by suspensions, conduct wantonly offensive to the public, and a general unfitness for the demanding office in which he was employed. LSA-R.S. 33:2500(A)(1), (3), (4), (5), (15). Since there is no indication of self-serving motives on the part of the appointing authority, and since the statutory grounds for dismissal delineated by LSA-R.S. 33:2500 have been met, we have no choice but to concludeunder LSA-R.S. 33:2501that Mr. Linton has been discharged in good faith and for legal cause. Mr. Linton's behavior has a manifest tendency to impair the efficient and intended operation of the public department which he represents. Dumez, Rigby, McIntosh and Legros, supra. Our view in this respect is corroborated by the appellate decisions upholding the discharge of officers for acts of physical violence towards other persons. Durr v. Natchitoches Municipal Fire and Police Civil Service Board, 392 So.2d 720 (La.App.3d Cir.1980); Herbert, supra. Mr. Linton's actions simply indicate that he lacks sufficient respect for the rights and dignity of others, and we deem such a respect essential to the proper conduct of Mr. Linton's former office.
We note that Mr. Linton, who was dismissed on November 11, 1977, contends that Bossier City is precluded from dismissing him because of the time lapse between his discharge and the offenses committed. However, we are unaware of any statutory authority for the proposition that an appointing authority may not review an employee's entire work record in determining his fitness for the public service at which he is employed. LSA-R.S. 33:2500(A)(15) expressly authorizes an appointing authority to take disciplinary action against an employee whose behavior indicates that he is unfit or unsuited for his job. We do not believe that an appointing authority could always accurately make a fitness evaluation absent access to a worker's past history. A judicial rule prohibiting such review would clearly frustrate the intent of LSA-R.S. 33:2500(A)(15). We do note that an employee could be disciplined on charges so stale that the appointing authority's good faith could be effectively impugned and the disciplinary action overturned. See Rigby, supra; Messer v. Dept. of Corrections, 358 So.2d 975 (La.App. 1st Cir.1978); Hamlett v. Division of Mental Health, 325 So.2d 696 (La.App. 1st Cir.1976). However, the good faith of the appointing authority in this case is in no way cast in doubt. The appellate courts have often approved an appointing authority's consideration of a public employee's cumulative record; the courts have thus upheld the termination of an employee for a series of wrongful acts. Legros, supra; Ragusa v. Dept. of Public Safety, 238 So.2d 193 (La.App. 1st Cir.1970); Cormier v. *521 Board of Institutions, 230 So.2d 307 (La. App. 1st Cir.1969). Such a long-term evaluation is legally permissible where conducted in good faith.
For the foregoing reasons, we deny Mr. Linton's application for reinstatement. We uphold the District Court's affirmance of the Board's decision to sustain the appointing authority's dismissal of Mr. Linton. The District Court's judgment is therefore affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] When the Bossier Municipal Fire and Police Civil Service Board heard Mr. Linton's appeal in 1978, only four of the Board's five members were present. At the conclusion of the hearing, the Board split evenly in its vote. The Board concluded that the Mayor's termination of Mr. Linton had thus been upheld, reasoning that Mr. Linton was legally required to garner a majority vote of three in order to overturn the Mayor's action. However, as Judge Fred Jones of this Court correctly pointed out, the Board's two to two vote did not constitute a legally valid administrative decision under LSA-R.S. 33:2476(M). That statute stipulates that the "concurring votes of any three members ... shall be sufficient for the decision of all matters to be decided or transacted by it." See Linton v. Bossier City Municipal Fire & Police Civil Service Board, 402 So.2d 716 (La.App.2d Cir. 1981).
[2] A. The tenure of persons who have been regularly and permanently inducted into positions of the classified service shall be during good behavior. However, the appointing authority may remove any employee from the service, or take such disciplinary action as the circumstances warrant in the manner provided below for any one of the following reasons:

(1) Unwillingness or failure to perform the duties of his position in a satisfactory manner.
(2) The deliberate omission of any act that it was his duty to perform.
(3) The commission or omission of any act to the prejudice of the departmental service or contrary to the public interest or policy.
(4) Insubordination.
(5) Conduct of a discourteous or wantonly offensive nature toward the public, any municipal officer or employee; and, any dishonest, disgraceful, or immoral conduct.
(6) Drinking vinous or spirituous liquors while on duty or reporting for duty while under the influence of liquor.
(7) The use of intoxicating liquors, or habit forming drug, liquid, or preparation to an extent which precludes the employee from performing the duties of his position in a safe or satisfactory manner.
(8) The conviction of a felony.
(9) Falsely making a statement of any material fact in his application for admission to any test for securing eligibility or appointment to any position in the classified service, or, practicing or attempting to practice fraud or deception in any test.
(10) Using or promising to use his influence or official authority to secure any appointment to a position within the classified service as a reward or return for partisan or political services.
(11) Soliciting or receiving any money or valuable thing from any person for any political party or political purpose.
(12) Inducing or attempting to induce by threats of coercion, any person holding a position in the classified service to resign his position, take a leave of absence from his duties, or waive any of his rights under the provisions of this Part, or of the rules.
(13) The development of any defect of physical condition which precludes the employee from properly performing the duties of his position, or the development of any physical condition that may endanger the health or lives of fellow employees.
(14) The willful violation of any provision of this Part or of any rule, regulation, or order hereunder.
(15) Any other act or failure to act which the board deems sufficient to show the offender to be an unsuitable or unfit person to be employed in the respective service.
B. Unless the cause or condition justifies an employee being permanently removed from the service, disciplinary action may extend to suspension without pay for a period not exceeding the aggregate of ninety days in any period of twelve consecutive months, reduction in pay to the rate prevailing for the next lower class, reduction or demotion to a position of any lower class and to the rate of pay prevailing therefor, or such other less drastic action that may be appropriate under the circumstances. Nothing contained herein shall prevent any employee who is physically unable to perform the duties of his position from exercising his rights of voluntary retirement under any applicable law.
C. Although it is incumbent upon the appointing authority to initiate corrective or disciplinary action, the board may, and shall upon the written request of any qualified elector of the state which sets out the reasons therefor, make an investigation of the conduct and performance of any employee in the classified service and, thereupon may render such judgment and order action to be taken by the appointing authority. Such action shall be forthwith taken by the appointing authority.
D. In every case of corrective or disciplinary action taken against a regular employee of the classified service, the appointing authority shall furnish the employee and the board a statement in writing of the action and the complete reasons therefor.
[3] See note 2, supra.
[4] Ragusa v. Dept. of Public Safety, 238 So.2d 193 (La.App. 1st Cir.1970); Cormier v. Board of Institutions, 230 So.2d 307 (La.App. 1st Cir. 1969); Leggett v. Northwestern State College, 140 So.2d 5 (La.1962).
[5] Dept. of Public Safety v. Rigby, 401 So.2d 1017 (La.App. 1st Cir.1981); McIntosh v. Monroe Municipal Fire and Police Civil Service Board, 389 So.2d 410 (La.App.2d Cir.1980); Petrus v. Guin, 378 So.2d 1016 (La.App.2d Cir. 1979); See also Herbert v. Dept. of Police, 362 So.2d 1190 (La.App. 4th Cir.1978).
[6] Dumez v. Houma Municipal Fire & Police Civil Service Board, 408 So.2d 403 (La.App. 1st Cir.1981).
[7] Although eight infractions were cited in the letter of dismissal sent by the mayor to Mr. Linton, we omit discussion of those infractions which were relatively inconsequential or not conclusively established by the evidence adduced.