467 So.2d 1273 (1985)
Larry LOMBAS
v.
DEPARTMENT OF POLICE.
CA-2804.
Court of Appeal of Louisiana, Fourth Circuit.
April 9, 1985.
Writ Denied June 7, 1985.
*1274 Sidney M. Bach, New Orleans, for plaintiff-appellant, Larry Lombas.
Salvatore Anzelmo, City Atty., Harold D. Marchand, Asst. City Atty., New Orleans, for defendant-appellee, Dept. of Police.
Before BARRY, BYRNES and WARD, JJ.
BARRY, Judge.
Larry Lombas appeals a Civil Service Commission ruling which affirmed his dismissal as a police officer with the New Orleans Police Department.
The dismissal was based on his off-duty participation in an alleged illegal poker game conducted in a hotel in New Orleans. The game was discovered by F.B.I. and Drug Enforcement agents during the course of an undercover drug investigation. The results of the investigation were reported to the New Orleans Police Department and on May 10, 1982 the game was raided. Officer Lombas was present and suspended from duty.
On May 26, 1982 Officer Lombas sought and obtained a temporary restraining order rescinding the suspension and prohibiting the Police Department from interrogating him under threat of job forfeiture, in violation of his right against self-incrimination. U.S. Const. Amend. V; La. Const. Art. I §§ 13, 16 (1974). The following day Lombas' suspension was rescinded and his file turned over to the City's Office of Municipal Investigations. Nine months later on February 25, 1983 O.M.I. subpoenaed Lombas for questioning. Lombas obtained a *1275 preliminary injunction prohibiting O.M.I. from proceeding with the investigation because its charter requires completion of an investigation within 90 days of a complaint.
The Internal Affairs Division of the Police Department resumed the investigation and on May 20, 1983 the Superintendent sent Lombas a letter of termination which charged violations of departmental rules and acts prejudicial to the police department. Lombas appealed to the Civil Service Commission which affirmed the termination.
The appropriate standard of appellate review of actions by the Civil Service Commission was stated in Walters v. Department of Police of the City of New Orleans, 454 So.2d 106 (La.1984) at pps. 113, 114:
... a multiple review function is committed to the court in civil service disciplinary cases. In reviewing the Commission's procedural decisions and interpretations of law the court performs its traditional plenary functions of insuring procedural rectitude and reviewing questions of law. Due concern both for the intention of the constitution and for the boundaries between the functions of the Commission and of the court, however, demands that a reviewing court exercise other aspects of its review function with more circumspection. In reviewing the commission's findings of fact, the court should not reverse or modify such a finding unless it is clearly wrong or manifestly erroneous. In judging the Commission's exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, the court should not modify the Commission's order unless it is arbitrary, capricious or characterized by abuse of discretion. (citations omitted)
Lombas raises ten specifications of error which can be consolidated into three arguments. The first alleges the Commission erred by concluding that the failure of the Police Department to follow its internal procedures was of no legal consequence.
Lombas argues the Operations Manual mandates that before any disciplinary action can be sustained, the department must conduct an independent investigation. That investigation is to be completed within 21 days of receipt of the complaint[1] (unless a formal extension is granted) and must include, whenever possible, statements from the accused, all witnesses and complainants.
Lombas asserts the Department violated his due process and equal protection rights in that: (1) no independent investigation was conducted by a member of the Police Department which instead relied on reports of federal undercover agents; (2) statements were obtained from federal agents but not other witnesses at the poker game; and (3) the investigation was not conducted within the specified time.
We find the department did conduct an investigation, though certainly not exhaustive. It was assigned to Sgt. Henry Aschebrock of Internal Affairs who was responsible for preparing the final disciplinary report that was submitted to Superintendent Morris. The report indicates that Sgt. Aschebrock interviewed Major Salles of the New Orleans Police Department who participated in the May 10, 1982 raid and F.B.I. Agent Fred Cleveland who headed the federal investigation. Agent Cleveland provided copies of the F.B.I.'s surveillance reports and photos of Lombas at the poker game. Agent Cleveland informed Sgt. Aschebrock that the F.B.I. had further evidence concerning the gambling operation, but advised it was in a sealed indictment which would be made available when the investigation ended. Superintendent Morris testified he interviewed the federal agents who observed Lombas at the card game. The department did not interview the other poker players; however, that does not constitute a denial of due process.
*1276 Officer Lombas was given a full hearing before the Commission at which all witnesses had an opportunity to present evidence. He relies on Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959) and United States v. Heffner, 420 F.2d 809 (4th Cir.1969), but those cases are not applicable. The procedures in the Operations Manual are directory, not mandatory, and are formulated solely for the guidance of government officials charged with executing them and are intended to secure order, system and dispatch in the conduct of disciplinary proceedings.[2] They do not confer substantive rights, see Sanders v. Department of Health and Human Resources, 388 So.2d 768 (La.1980). The failure of the Police Department to interrogate all witnesses or to follow all of its procedures did not prejudice Lombas or deprive him of substantive protection. The Commission did not err in so determining.
The one year lapse between the raid and Lombas' dismissal does not automatically preclude disciplinary action. Staleness alone is no reason for disregarding a disciplinary charge. Ragusa v. Department of Public Safety Division of State Police, 238 So.2d 193 (La.App. 1st Cir.1970). Although our jurisprudence has recognized that there must be a point at which an appointing authority must take action relative to an employee's misconduct or else be precluded from doing so, each case must be decided on its own facts. Ragusa, supra.
By the time O.M.I. started, its time limitation had lapsed and Lombas obtained an injunction against the proceeding. The Internal Affairs Division resumed the investigation and completed it. The time from the raid to completion of the investigation was unnecessarily long, but the record does not show bad faith by the Police Department. We do not condone O.M.I.'s unexplained failure to act, but under these facts, the one year delay cannot bar the disciplinary action. Cartwright v. Department of Revenue and Taxation, 460 So.2d 1066 (La.App. 1st Cir.1984).
Lombas' second argument is that the Commission's findings were clearly wrong or manifestly erroneous. Our review of the record convinces us that the Commission committed manifest error in its factual findings on at least one crucial issuethat the poker game was being operated for a profit in violation of La.R.S. 14:90.
The unrefuted testimony of Mike Stubben was that the game had been established as a private club under the name Louisiana State Poker Club. The "cut" which was taken for the house was used solely for paying hotel rent, renovations to the room, and refreshments. Stubben testified no profits were realized from the game and, at the time of the raid, the game was "in the red". He further testified that the records which verified the club's expenses had been confiscated by federal officers but were never produced. Thus, there is no showing that the game was illegal. In fact, when directly questioned on the issue of Lombas' participation in the game, one federal agent testified that outside a $10.00 tip he once handed Lombas, Lombas never received any payment for his participation in the game. Therefore, we find that the Commission was clearly wrong in determining that Lombas participated in the poker game for profit.
Lombas' third argument is that the Commission abused its discretion in finding that his dismissal was based on legal cause and was commensurate with the infraction.
An employee who has gained permanent status in the classified city civil service cannot be subjected to disciplinary action by his employer except for cause expressed in writing. La. Const. Art. X § 8 (1974). Legal cause for dismissal exists *1277 if the facts found by the Commission disclose that the conduct of the employee impairs the efficiency of the public service. Walters, supra. The appointing authority bears the burden of proving such cause by a preponderance of the evidence. Newman v. Department of Fire, 425 So.2d 753 (La. 1983).
Lombas argues initially that the evidence cannot support his termination because neither he nor anyone else was ever prosecuted for involvement in the poker game. He also submits that because the disciplinary action involved accusations of criminal infractions (i.e. gambling, La.R.S. 14:90, and malfeasance in office, La.R.S. 14:134) the burden of proof of the appointing authority should properly have been "beyond a reasonable doubt." Those arguments are without merit.
The burden of proof is less in a Civil Service hearing than in a criminal proceeding. Although the facts must be "clearly" established, they need not be established "beyond a reasonable doubt." Savoie v. State, Department of Corrections, 394 So.2d 1285 (La.App. 1st Cir. 1981); Herbert v. Department of Police, 362 So.2d 1190 (La.App. 4th Cir.1978). The action or inaction of prosecutorial authorities is irrelevant for purposes of a disciplinary proceeding. Foster v. Department of Public Welfare, 159 So.2d 515 (La.App. 1st Cir.1963).
However, because we conclude that the Commission erred in determining that Lombas participated in a gambling operation for profit, we must also conclude that the Commission abused its discretion in finding legal cause for his dismissal.
Dismissal from permanent employment is the ultimate disciplinary action that can be given a classified employee. Thus, the cause justifying some lesser disciplinary action might not justify a dismissal. Cartwright v. Department of Revenue and Taxation, supra; Ryder v. Department of Health and Human Resources, 400 So.2d 1123 (La.App. 1st Cir.1981).
The Commission obviously did not consider the fact that Lombas was employed by the Police Department approximately fifteen years, eleven months and was days short of pension eligibility. His service record was exemplary and meritorious. His presence at the card game was strictly during off-duty and he was not in uniform. We fail to see how that activity impaired the "efficient operation" of the Police Department.[3] The Commission's erroneous determination that Lombas participated in the game for profit failed to show cause and his dismissal was unwarranted.
The decision of the Civil Service Commission is reversed. It is ordered that Officer Larry Lombas be reinstated with full back pay.
REVERSED.
NOTES
[1] The 21 day time limitation for completing investigatory reports was amended, effective June 13, 1982, to provide for a 25 day limitation.
[2] ASOP 6.0, Disciplinary Procedure, Rule I provides:

"The purpose of this Procedure is to establish a uniform method of investigating complaints and handling disciplinary actions against both commissioned and civilian employees of the New Orleans Police Department, who have allegedly committed violations of City Ordinances, State Statutes, Federal Law, and/or Departmental Rules and/or Regulations.
[3] It's difficult to ignore the fact that card games are a way of life in New Orleans and expenses are divided between the players by "cutting" the pot(s).