370 So.2d 109 (1979)
Narvin POWELL, Plaintiff-Appellant,
v.
CITY OF WINNFIELD FIRE AND POLICE CIVIL SERVICE BOARD, Defendant-Appellee.
No. 13764.
Court of Appeal of Louisiana, Second Circuit.
January 16, 1979.
Rehearing Denied February 28, 1979.
*110 Larvadain & Scott by Edward Larvadain, Jr., Alexandria, for plaintiff-appellant.
Simmons & Derr by Kermit M. Simmons, Winnfield, for defendant-appellee.
Before BOLIN, PRICE and MARVIN, JJ.
En Banc. Rehearing Denied February 28, 1979.
MARVIN, Judge.
Plaintiff, classified under civil service as a policeman, was discharged from employment by the City of Winnfield on grounds that he neglected his duty. The Fire and Police Civil Service Board, after a hearing, upheld the discharge and was upheld by the district court.[1] This appeal followed.
Plaintiff complains that the appointing authority (LRS 33:2533 2), here the City Aldermen, did not furnish him with a "statement in writing of the . . . complete reasons" for his discharge as required by LRS 33:2560 D and that the board erred in determining that his discharge, on the broad ground of neglect, was made in good faith for cause. LRS 33:2561. We agree and reverse.
*111 We summarize the events revealed by the record leading up to the hearing before the Board:
Sometime before October 25, 1977, the Chief of Police began an investigation of plaintiff's conduct. Plaintiff was suspended on October 25 by the Chief, who told plaintiff he ". . . was going to have to suspend him until [he] could continue and finish [his] investigation on it." Before November 15, 1977, the Chief finished his investigation and obviously reported to the Mayor and Aldermen. On November 15, the Aldermen adopted the following resolution, a copy of which plaintiff received in the mail from a source which is not revealed by this record:
"WHEREAS, A report of an investigation of Chief Percy Roberts into complaints of neglect of duty by a police officer was received in executive session; and
"WHEREAS, the report outlined serious incidents of neglect of duty; and
"WHEREAS, the conduct outlined in the report reflects neglect of duty and also reflects unfavorably on the Police Department of the City of Winnfield; and
"WHEREAS, the report of the Chief of Police reveals many instances wherein Patrolman Narvin Powell slept on duty; departed his duty station for long periods of time and failed to follow the normal reporting procedures of the Police Department:
"BE IT RESOLVED that Patrolman Narvin Powell be dismissed as a police officer of the City of Winnfield for neglect of duty in accord with the facts outlined in the report of the Chief of Police of the City of Winnfield and in accord with the recommendations of said Chief.
"BE IT FURTHER RESOLVED that a copy of this resolution be served on the Fire and Police Civil Service Board of the City of Winnfield and upon Mr. Powell."
The Chief's report, so often mentioned in the resolution (our emphasis above) and the express basis for the discharge ("for neglect of duty in accord with the facts outlined in the report . . .") is not in the record and a copy of the report was never furnished to plaintiff or to the Board. The record does contain, however, this letter from the Chief to the Board, dated November 28, 1977, after the resolution discharging plaintiff was enacted:
"I am writing to notify you of the suspension of Patrolman Narvin Powell. He was suspended from the Winnfield Police Department on October 25, 1977.
"On October 17, 1977 Mayor Henderson received an anonymous letter making some complaints against Patrolman Narvin Powell. Upon Mayor Henderson's recommendations I made an investigation.
"In my investigation I found reliable information that Patrolman Powell had been visiting some girl friends from one to four hours at a time while he was supposed to be working. I also found that he had been sleeping from one to six nights a week while he was supposed to be working.
"I suspended Patrolman Powell until I could finish my investigation. He was suspended for Neglect of Duty."
Where the Municipal Fire and Police Civil Service Law requires that "complete reasons" in writing be given the discharged civil service employee and the Board (LRS 33:2560 D), the State Civil Service Law requires "detailed reasons".[2] Even a cursory comparison of the cases and of the several laws pertaining to civil service reveals that one section of the law lists several grounds for which an employee under civil service may be discharged while another section of the law requires that the employee and the civil service board be given written *112 notification of the discharge and the reasons for the discharge. See LRS 33:2560, 2561; LRS 33:2500, 2501; and remainder of Chapter 5, LRS 33. See also Robbins v. New Orleans Public Library, 208 So.2d 25 (La.App. 4th Cir. 1968).
The purpose of such laws is to afford due process to the employee under civil service so that he might know with reasonable particularity the facts and circumstances he may be called upon to rebut in case his employer makes out a prima facie case against him before the Board to whom he has the right of appealing for an investigation and a full hearing. See Major v. Louisiana Department of Highways, 333 So.2d 316 (La.App. 1st Cir. 1976).
The requirement that reasons be given in writing for the discharge of a civil service employee plainly comprehends a fair and clear statement of the misconduct of the employee, including, whenever pertinent, time, dates and places. Hays, supra, in footnote 2, 143 So.2d at 74. Whether the reasons be labeled as "detailed reasons" as required in the state civil service law, or as required here, "complete reasons", the purpose of the requirement is not changed. See Patrick v. Lake Charles Municipal Fire & Police Civil Service Board, 344 So.2d 1121, 1123, (La.App. 3d Cir. 1977); Marchiafava v. Baton Rouge Fire and Police Civil Service Board, 233 La. 17, 96 So.2d 26 (1957), is not to the contrary.
LRS 33:2560 A sets forth 15 "reasons" why plaintiff could be discharged or disciplined. Some of these, for instance number eight (conviction of a felony), are specific. Others, such as number one (failure to perform the duties of his position in a satisfactory manner), are extremely broad. Thus where the section states in Part A that an employee may be discharged for a broad "reason", it logically and reasonably follows that the "complete reasons" required to be given in writing by Part D of the section contemplates that the broad reason shall be made specific (or detailed or complete) as to the circumstances of the employee's failure (or neglect) to perform the duties of a particular position.
The report by the Chief to the Aldermen may have contained sufficient detail of misconduct by plaintiff to warrant his being discharged as a policeman but we cannot presume its contents. LRS 33:2561 contemplates that the Board shall conduct a hearing and an investigation, that the evidence before the Board, warranting discharge, be conclusive in order for the Board to affirm the Aldermen, and that the Board make written finding of facts warranting discharge.[3]
The resolution of the Aldermen expressly states that plaintiff is
". . . dismissed as a police officer. . . for neglect of duty in accord with the facts outlined in the report of the Chief of Police . . ."

The record does not show, however, that those facts (be they characterized as detailed or as complete) were given in writing or otherwise to the plaintiff as required by LRS 33:2560 A.[4]
At the hearing and investigation conducted by the defendant Board, plaintiff repeatedly *113 objected to the deficiency of the written notification of the reasons for his discharge and the lack of specifics. The resolution borders upon, but does not achieve, specificity, in stating that the report of the Chief revealed "many instances" of plaintiff sleeping on duty, of plaintiff departing his duty station, and of failing to follow reporting procedures of the department. Presumably, the details or specific circumstances of these "instances" were available to the Aldermen, as the appointing authority, and could have (and should have) been given to the plaintiff. Upon the objection being made by plaintiff, the Aldermen, through counsel, could have supplied written specificity to plaintiff and the Board, and the Board could have continued the hearing and investigation to allow plaintiff time to prepare his defense.
". . . The board shall have complete charge of [the] hearing and may conduct it in any manner it deems advisable, without prejudice to any . . . party. . ." LRS 33:2561.
In any event, the statutory requirement of specificity in written reasons for discharge, has not been fulfilled under the circumstances shown by this record.
Judgment below is reversed at defendants' cost and this cause is remanded to the City of Winnfield Fire and Police Civil Service Board for further proceedings in accordance with law.
NOTES
[1] See Part III, Chapter 5, The Fire and Police Civil Service Law for Small Municipalities and for Parishes and Fire Protection Districts, LRS 33:2531 et seq.

"Any regular employee . . . who feels that he has been discharged . . . without just cause may . . . demand in writing a hearing and investigation by the board to determine the reasonableness of the action. * * *
"[T]he board may decide the issue involved on the basis of the evidence adduced [at the hearing] and confined to the question of whether the action taken . . . was made in good faith for cause set forth in the provisions of this Part. * * *
"Any employee . . . may appeal from any decision of the board . . . This hearing [of the appeal] shall be confined to the determination of whether the decision made by the board was made in good faith for cause under the provisions of this part." LRS 33:2561.
[2] See La. Constitution Art. 10, § 1, et seq. Hays v. Louisiana Wildlife and Fisheries Commission, 243 La. 278, 143 So.2d 71 (1962).

LRS 33:2560 D reads:
"In every case of corrective or disciplinary action taken against a regular employee of the classified service, the appointing authority shall furnish the employee and the board a statement in writing of the action and the complete reasons therefor."
[3] [The] employee . . . may demand . . . a hearing and investigation . . . The board shall grant . . . a hearing and investigation. . . The board shall have complete charge of any such hearing and investigation. . . [T]he board shall make a written finding of fact . . . After such investigation, if the evidence is conclusive, the board may affirm the action of the appointing authority . . ." LRS 33:2561.
[4] The Chief testified at the Board hearing that he recommended to the Aldermen that plaintiff be fired. The Chief did not testify before the Board as to details of what occurred, when, with respect to plaintiff's neglecting his duty by sleeping on the job or otherwise.

"I recommended to the [aldermen] that they dismiss [plaintiff] for neglect of duty, for failing to be on duty where he was available for a call at all times while he was supposed to be on duty. * * *
". . . also for sleeping on the job." The Chief did state that the one occasion when he found plaintiff asleep in a police car some three to five months before October 25, 1977, was not the reason why plaintiff was discharged and that he made the decision to discharge plaintiff after October 25, 1977, on the basis of his investigation. The chief testified that during his investigation he took statements from two other policemen, Brown and Thomas. These statements are not in the record and it does not appear that copies were furnished to the Board or to plaintiff. These officers, however, did testify before the Board generally about events which occurred more than one year before plaintiff's suspension on October 25, 1977, and specifically about one event which occurred after a football game on November 14, 1977, which was after plaintiff's suspension and last contact with the Chief.
These events, as related by the two officers, concerned plaintiff's departing from the patrol car and from these officers during the late night at a certain residential area (West Avenue Finn Street). The patrol car would return about two hours later and plaintiff would resume patrolling with the other officer. Thomas testified that on one occasion he returned to plaintiff's departure site in response to a message from the police radio operator that plaintiff ". . . said for us to come pick him up off the stake-out." Thomas accompanied plaintiff on one occasion to visit a residence in the area. The purpose of the visit is not revealed, except perhaps in the letter of November 28 from the Chief to the Board. On one or more occasions plaintiff allowed Thomas to depart from the patrol car to attend to a personal errand for an hour or so.
Each officer testified that he had given a statement to the Chief which included the plaintiff's most recent departure from patrol November 14, 1977. Both officers testified that they did not know why plaintiff departed the patrol car. Neither officer testified as to plaintiff sleeping while on duty.
The Chief did testify that on "several occasions" he had conferred with plaintiff about plaintiff sleeping on the job, but that he did not forewarn plaintiff before October 25, 1977, that plaintiff was going to be suspended. Other than the statement, "I told him I was going to have to suspend him until I could continue and finish my investigation on it", the record does not reveal that the Chief told plaintiff why he was being suspended or that the Chief had any contact with plaintiff after October 25, 1977. The specifics of how, when, for what length of time, and where, plaintiff either slept on duty, departed his duty station, or failed to follow departmental reporting procedures were not included in the resolution of the Aldermen nor in any findings of fact by the Municipal Civil Service Board. The record also does not show that the Chief verbally informed plaintiff of the specifics.