JASPER E. JONES, Judge.
This is an appeal of a judgment affirming a decision by the Bossier City Municipal Fire & Police Civil Service Board (hereinafter referred to as the Board) affirming certain disciplinary actions taken by the City of Bossier City, Office of the Mayor (hereinafter referred to as the appointing authority) against a Chief of Police of the *624 Bossier City Police Department. The appellant is Bobby R. Gauthier, former Bossier City Chief of Police.
We affirm.
FACTS
By letter dated May 28, 1985, the appellant was informed by the appointing authority that he was suspended with pay from his position as a Chief of Police for 15 days after which he was to be demoted to the rank of Patrol Officer. The letter cited violations of LSA-R.S. 33:2500 A(3), (5), (14) and (15) and LSA-Const. 1921 (Ancillaries), Art. 14, § 15.1, 35(1), 35(3) (See LSA-R.S. 33:2505 (1), (3)[1] which contains substantially the substantive provisions of the cited part of the 1921 Constitution). The letter alleged the appellant, in the early months of 1983, had conspired with others to influence the results of B.W. Spencer’s physical examination in an attempt to prevent B.W. Spencer’s promotion to the rank of Lieutenant in the Bossier City Police Department. Gauthier appealed and a hearing was conducted by the Board on July 15, 1985, where a transcript of the testimony was taken. At the conclusion of the hearing the Board passed a motion that the appointing authority had not acted in good faith and for just cause arid amended the punishment to reduce the appellant’s rank to Lieutenant. By a “Finding of Fact” dated the day of the hearing the Board found that it was the consensus that the portion of the mayor’s action, regarding reduction in rank, was too severe and that it should be amended. By letter dated July 17, 1985, the Board informed Mayor Jones it had decided the city had not acted in good faith and just cause and amended the appointing authority’s actions by reinstating the plaintiff to the rank of Lieutenant.
The appointing authority and Gauthier appealed from the Board’s decision to the District Court and by written opinion signed on March 26, 1986, the trial court remanded the matter to the Board in accordance with the following directions:
“Therefore, it is the conclusion of this Court that the record does not conclusively show what action was taken by the board, and this case is hereby remanded to the board for a specific determination of the question: Was the action of Mayor Jones taken against Chief Gauthier in good faith for cause under the provision of this act, or not. If the board finds that there is conclusive evidence to show that the action of the mayor was taken in good faith for cause, then the board should affirm the action of the mayor. If, on the other hand, the board finds that the action of the mayor was not taken in good faith for cause, then the board has two options: 1) order immedi *625 ate reinstatement of Chief Gauthier to the position of police chief; or 2) order immediate reinstatement of Chief Gauthier to the position of police chief and modify the disciplinary action by directing a suspension without pay for a period of time to be found by the board. These questions are to be determined on the basis of the evidence submitted at the hearing on July 15, 1985. This case is hereby remanded to the board for a determination of these questions.”
The Board met on April 10, 1986, and voted to affirm the disciplinary actions of the appointing authority by deciding the City did act in good faith and for cause. By judgment rendered on September 8, 1986, the trial court affirmed the Board’s decision.
Gauthier appeals. The appellant’s eleven assignments of error present the following issues for decision:
(1) Is the decision by the Civil Service Board barred by laches as the events occurred 2½ years prior to the disciplinary action by the appointing authority?
(2) Was any legal cause of action alleged or proven by the appointing authority?
(3) Did the appointing authority prove any of its allegations by a preponderance of the evidence?
(4) Is the decision by the Civil Service Board null as the original finding of bad faith on part of the appointing authority precludes the imposition of any punishment?
(5) Did the original decision by the Civil Service Board become final and, therefore, unchangeable?
(6) Was the trial court in error in not allowing the introduction of additional evidence upon remand of the Civil Service Board’s original decision?
(7) Do the prohibitions contained in LSA-R.S. 33:2505(3) apply to physical examinations which are required by Police Department regulations?
(8) Does LSA-R.S. 33:2505(3) prohibit any act whatsoever that may tend to defeat or obstruct an employee in regard to the right to examination, eligibility, certification or appointment?
(9) Whether the mere hope of the appointing authority that an employee will fail a physical examination constitutes a violation of LSA-R.S. 33:2505(3)?
(10) Who has the right to determine and certify whether a civil service employee is eligible for promotion?
(11) Can there be a violation of LSA-R.S. 33:2505(3), in regard to promotions, when the appointing authority has not officially requested that the Civil Service Board provide a list of eligible employees?
LAW ON REVIEW OF CIVIL SERVICE BOARD DISCIPLINARY DECISIONS
An employee who has gained permanent status in the classified city civil service cannot be subjected to disciplinary action by his employer except for cause expressed in writing. He may appeal to the Board and the burden of proof on appeal as to the facts is on the appointing authority to establish by conclusive evidence that the action taken was in good faith and for cause. LSA-R.S. 33:2501(C)1. The Board’s decision is subject to review by appeal to the court of original unlimited jurisdiction in civil suits in the parish where the board is domiciled. LSA-R.S. 33:2501 E(l).[2]
“Cause” for the dismissal of a person who has gained permanent status has been interpreted to include conduct prejudicial to the public service in which the employee in question is engaged or detrimental to its efficient operation. The Board has the duty to decide independently from the facts presented whether the appointing authority has in good faith and for cause taken the disciplinary action. The determination by the court is confined to *626 whether the decision made by the board was made in good faith and for cause. McIntosh v. Monroe Mun. Fire, Etc., 389 So.2d 410 (La.App. 2d Cir.1980), writ den., 395 So.2d 1363 (La.1981); LSA-R.S. 33:2501 E(3).[3] A reviewing court should not reverse the Board’s conclusion unless the decision is arbitrary, capricious or an abuse of discretion. Walters v. Dept. Of Police Of New Orleans, 454 So.2d 106 (La. 1984); Linton v. Bossier City Mun. Fire & Pol. Bd., 428 So.2d 515 (La.App. 2d Cir. 1983); Matter of Geiger, 337 So.2d 549 (La.App. 2d Cir.1976). The Board must find an absence of good faith for cause to justify a reversal or modification of the action of the appointing authority. City of Kenner v. Wool, 320 So.2d 245 (La.App. 4th Cir.1975); City of Westwego v. McGee, 448 So.2d 166 (La.App. 5th Cir.1984); Cf., Branighan v. Department of Police, 362 So.2d 1221 (La.App. 4th Cir.1978), writ den., 365 So.2d 247 (La.1978). If the Board finds the action of the appointing authority was not taken in good faith for cause it must reverse the order of the appointing authority and it may then modify the discipline imposed only to the extent of “directing a suspension without pay for a given period.” LSA-R.S. 33:2501 C(l).[4]
Issue #1 — Is the doctrine of laches applicable?
The appellant asserts the objectionable conduct occurred approximately two and one-half years prior to the initiation of the disciplinary action and such a delay is evidence of condonation on part of the prior Mayor of Bossier City and bad faith on part of the present administration. It is argued that any disciplinary action is barred by the doctrine of laches.
The record shows the objectionable conduct took place in January of 1983 while Mayor Marvin Anding was the appointing authority. A complaint was filed with the Board on May 13, 1985, by B.W. Spencer who asserted he had recently acquired evidence that the appellant had deliberately tried to prevent his promotion to the rank of Lieutenant. Mayor Don Jones, the present appointing authority, by letter dated May 15, 1985 directed the Board to investigate the complaint. The Board informed Mayor Jones, by letter dated May 23, 1985, that an investigative report had substantiated the allegations in the complaint and recommended the appointing authority take corrective action. The Board also recommended the appointing authority address the inordinate delay of Sgt. Don Webber in relaying the underlying facts of the situation to B.W. Spencer. Mayor Jones’ chosen disciplinary action was communicated to the plaintiff by letter dated May 28, 1985.
We conclude the doctrine of laches is not applicable to the disciplinary action taken against the appellant. It is well settled that staleness alone is no reason for disregarding a disciplinary charge. Although our jurisprudence has recognized that there must be a point at which an appointing authority must take disciplinary action or be precluded by the doctrine of laches, each case must be decided on its own merits. Lombas v. Department Of Police, 467 So.2d 1273 (La.App. 4th Cir. *627 1985), writ den., 470 So.2d 120 (La.1985); City of Opelousas v. Scrantz, 360 So.2d 1379 (La.App. 3d Cir.1978), writ den., 363 So.2d 535 (La.1978). The record establishes the present appointing authority acted expeditiously in responding to B.W. Spencer’s letter of May 13, 1985. There is no evidence that B.W. Spencer or Mayor Jones had any knowledge of the objectionable conduct in question prior to this point in time and the appellant cites no authority for holding the present appointing authority responsible for any inaction by former Mayor Anding or Sgt. Don Webber. As no bad faith has been shown to exist on part of the present appointing authority or B.W. Spencer, in regard to the delay in question, and as the response to the letter of complaint was expeditious, then there is no basis for barring the disciplinary action due to the doctrine of laches. Cf., Lombas v. Department of Police, supra.

Issues #2, #3, #7, #8, #9, #10, #11— Did the appointing authority estabish a cause of action and did it prove any of its allegations and establish by conclusive evidence that the disciplinary action taken was in good faith and for cause?

The appellant argues no legal basis for the disciplinary action was established as former Mayor Anding had never formally initiated any promotion process and B.W. Spencer, therefore, had no right to any promotional examination by a physician. As such, it is asserted no cause of action arose under LSA-R.S. 33:2505(3).[5] He also asserts the appointing authority failed to prove any of its allegations by a preponderance of the evidence.
The record establishes that at the hearing held by the Board on July 15, 1985, the appellant testified former Mayor Anding led the appellant to believe permission had been granted to initiate promotions of three different ranks within the Bossier City Police Department. The appellant advised Mayor Anding three names he thought were eligible pursuant to the Civil Service law for the promotions. The appellant related to these individuals they were to be promoted and actually gave one of these persons his old Lieutenant bars so the individual could wear them when he was promoted to this rank. B.W. Spencer’s name was the first name on the Civil Service eligibility list for promotion to Lieutenant. Spencer’s name was not initially considered by the appellant for promotion because appellant had been informed by a Civil Service representative it would be possible to circumvent B.W. Spencer as he had been on sick leave for many months and it was unknown when he would return to work. The appellant then sought the advice of an Assistant City Attorney as to whether B.W. Spencer could be legally passed over. The appellant was advised to notify B.W. Spencer and give him the opportunity to go to a doctor and come back to work. Pursuant to this notice appellant notified B.W. Spencer of the anticipated promotions. B.W. Spencer produced, the very day he received the notification, a full medical release to return to work from his personal physician. The appellant related he was highly suspicious of this turn of events as he had been informed B.W. Spencer had previously maintained he would be unable to return to work for five to eight months. The appellant then scheduled a medical examination for Spencer with Dr. Bipin A. Turakhia, the City Physician, as medical examinations by a city physician were required when an individual returns from sick leave and also when an officer was scheduled for promotion. The appellant completed a letter on January 19, 1983, to Dr. Turakhia and had it delivered, along with certain medical forms required for the examination, by Internal Affairs Officer Don Webber.[6] Webber was directed to *628 personally advise Dr. Turakhia of Spencer’s recent disability and the effect his medical condition would have on his work. The exact instructions given by the appellant to Webber for the purpose of informing the doctor about Spencer are not totally clear from the record. The appellant testified he never told Don Webber to advise Dr. Turakhia to fail B.W. Spencer on his examination but admitted Webber could have received this impression from what appellant told him as this was the appellant’s subjective intent. The appellant also admitted he had never before sent a letter to a physician in preparation for the examination of a police officer and that never before had such a medical examination been scheduled to satisfy both the sick leave and promotion requirements simultaneously. After notification was received that B.W. Spencer had passed the medical examination by Dr. Turakhia, the appellant informed Mayor Anding that one of the three names previously mentioned was not correct and that B.W. Spencer was entitled to be promoted to Lieutenant. The appellant related that Mayor Anding then indicated that no promotions would be authorized for anyone.
Don Webber testified the appellant indicated to him that he did not want B.W. Spencer to be appointed to Lieutenant. He also related the appellant left no doubt in his mind he was to take the letter of January 19, 1983, to Dr. Turakhia and talk with him in hopes of influencing the physician to report an adverse physical examination of Spencer. Webber stated the appellant wanted him to relate to Dr. Turakhia that it was rumored B.W. Spencer would try to get a medical retirement soon after being promoted to Lieutenant, although this rumor was not actually related when he met with the physician. Don Webber also testified that the day before Spencer received notice of the pending promotions, Spencer had told him it would be least five weeks before he could return to work. The next day Spencer returned to the Police Department with a full medical release from a private physician.
Charles Kelly testified he was an Assistant Chief of Police at the time of B.W. Spencer’s physical examination and worked in the personnel department of the police force. He related that it would have been his job to schedule B.W. Spencer for an appropriate physical examination upon returning from sick leave but the appellant scheduled the needed examination. Kelly was first made aware of the Spencer examination when Dr. Turakhia called him on the telephone to report on the results of the examination. Charles Kelly related that it was standard procedure to get a promotion physical only after a promotion had been authorized and he was surprised to hear the physician report that there was no reason not to promote B.W. Spencer. Kelly stated he wrote the physician’s remarks on a piece of paper and took it to the appellant whereupon the appellant threw the paper down on his desk and stated “If the man can't do what I tell him to do, we don’t need him anymore and don’t send anybody else to Dr. Turakhia.” No more physical examinations were performed for the City of Bossier by Dr. Turakhia.
Assistant Chief Kelly testified the work required of a Lieutenant in the Bossier police force entails more office work than Spencer does at his present rank and, therefore, the proposed promotion would result in Spencer doing less strenuous work. This information is contrary to that contained in appellant’s letter to Dr. Turak-hia.
*629 Dr. Bipin Turakhia testified Sgt. Don Webber visited him prior to his scheduled examination, gave him the appellant’s letter and related B.W. Spencer had some past illness, had been on sick leave for a long period of time and would probably be a liability to the police department. Dr. Turakhia related the special attention directed toward this examination made him apprehensive as the impression was conveyed that B.W. Spencer was to fail the physical.
Harvey DeLaune testified he was City Attorney for the City of Bossier City and was present while the appellant and Mayor Anding were discussing the proposed promotions within the police department. He related Mayor Anding had always been opposed to the promotions, feeling the police department had too many supervisory personnel, and had previously rejected a letter from the Board recommending the proposed action. He also added B.W. Spencer had brought a mandamus suit to compel the Mayor’s Office to approve the promotions. Harvey DeLaune related Mayor Anding directed the appellant to schedule the required physical examination, as B.W. Spencer was attempting to return from sick leave, and to be sure the city physician knew that B.W. Spencer had been sick a long time.
Robert Dailey testified he was Executive Assistant to Mayor Anding until 1984 and was present when the appellant and Mayor Anding were discussing promotions. The witness related that at one point Mayor Anding agreed he would consider the appellant’s request to promote within the police department. Mayor Anding became hostile after learning that B.W. Spencer had returned with a full medical release from a private physician. Mayor Anding subsequently related to the appellant there would be no promotions for anyone after the appellant informed the mayor they could not bypass B.W. Spencer. Robert Dailey also related that Mayor Anding felt B.W. Spencer had been “sandbagging” in regard to the claimed total disability.
The evidence reflects B.W. Spencer was singled out for special treatment upon his attempt to return to work from sick leave. The appellant, by his own admission, intended for his letter of January 19, 1987, and the visit by Don Webber, to influence the results of the physical examination by Dr. Turakhia. The scheduling of a single physical examination by the appellant to cover both the sick leave and promotion requirements, with the promotion physical occurring prior to the actual promotion in contravention of standard procedure, is evidence of how keenly the appellant wanted to discredit B.W. Spencer and find a valid reason to deny his potential promotion. The testimony of Assistant Chief Kelly describing the appellant’s reaction to Spencer’s successful completion of the examination clearly establishes that Dr. Turakhia had been expected to fail the officer. The fact that B.W. Spencer had no right to a promotion examination, as the appointing authority had not formally initiated or approved the proposed promotions, is not relevant in deciding whether the appellant’s conduct amounts to just cause for the subsequent disciplinary action.
The totality of the record establishes appellant’s motive was to attempt to cause Dr. Turakhia to find Spencer was not physically able to perform the work required by the position of Lieutenant. Appellant’s conduct was not designed to obtain a fair, uninfluenced medical opinion of Spencer’s physical condition from the examining physician. Appellant’s conduct was designed to obstruct, if possible, Spencer’s eligibility for one of the promotions under consideration. Appellant desired to have Spencer’s name removed as the first name on the eligibility list. Appellant’s conduct was contrary to the provision of LSA-R.S. 33:2505(3).
The conduct of the appellant, when viewed in the larger context of his status as a Chief of Police, was indeed prejudicial to the police department and detrimental to its efficient operation. The conduct could reduce the moral of the officers of the department because it would destroy their confidence and respect for their appointed leader because the chief's conduct in this case would establish to the members of the *630 police department that they could not always expect fair and impartial treatment from the Chief of Police. LSA-R.S. 33:2500 A(3), (5); LSA-R.S. 33:2505(1), (3); Cf., Newman v. Department Of Fire, 425 So.2d 753 (La.1983). The evidence is conclusive that the Board’s decision was made in good faith and for cause and these assignments of error are without merit.
Issues #4, #5, #6 — Is the decision by the Board null, as it’s original determination had become final, and should the trial court have allowed the introduction of additional evidence?
The appellant argues that as the Board originally found the appointing authority in bad faith, then it had no choice but to reinstate him to his former rank of Chief of Police. The appellant also asserts the original decision had become final and un-changable and that he should have been allowed to present additional evidence of the appointing authority’s bad faith in accordance with LSA-R.S. 33:2501 B(2).[7]
We determine that none of the assigned errors have merit. The ambiguity of the decision by the Board shown in the record at the time of the first appeal, together with the illegal modification of the punishment imposed by a reduction in appellant’s rank when the Board could have imposed only a suspension without pay, establishes the trial court was well within its discretion in remanding the matter to the Board for a definite and more articulate expression of its decision. Cf., Glazer v. Com’n On Ethics For Pub. Employees, 431 So.2d 752 (La.1983). The remand instruction to the Board was to clarify its decision based upon the record made at the initial June 15,1985 hearing and we discern no error in this instruction. For this reason we find the appellant has no cause to complain that he was not given an opportunity to introduce additional evidence on remand.
The decision of the Board having been made in good faith and for cause, we AFFIRM the trial court judgment at appellant’s cost.
ON APPLICATION FOR REHEARING
Before NORRIS, JASPER E. JONES, HALL, LINDSAY and FRED W. JONES, JJ.
Rehearing denied.

. § 2500. Corrective and disciplinary action for maintaining standards of service
A. The tenure of persons who have been regularly and permanently inducted into positions of the classified service shall be during good behavior. However, the appointing authority may remove any employee from the service, or take such disciplinary action as the circumstances warrant in the manner provided below for any one of the following reasons:
[[Image here]]
(3) The commission or omission of any act to the prejudice of the departmental service or contrary to the public interest or policy.
[[Image here]]
(5) Conduct of a discourteous or wantonly offensive nature toward the public, any municipal officer or employee; and, any dishonest, disgraceful, or immoral conduct.
[[Image here]]
(14) The willful violation of any provision of this Part or of any rule, regulation, or order hereunder.
(15) Any other act or failure to act which the board deems sufficient to show the offender to be an unsuitable or unfit person to be employed in the respective service.
9 2505. Other prohibited acts
No person shall:
(1) Make any false statement, certificate, mark, rating, or report with regard to any test, certification, or appointment made under any provisions of this Part or commit or attempt to commit any fraud preventing the impartial execution of this Part and the rules.
[[Image here]]
(3) Defeat, deceive, or obstruct any person in his right to examination, eligibility, certification, or appointment under this Part, or furnish to any person any special or secret information for the purpose of affecting the rights or prospects of any person with respect to employment in the classified service....

. § 2501. Appeals by employees to the board
[[Image here]]
E. (1) Any employee under classified service and any appointing authority may appeal from any decision of the board, or from any action taken by the board under the provisions of the Part that is prejudicial to the employee or appointing authority. This appeal shall lie direct to the court of original and unlimited jurisdiction in civil suits of the parish wherein the board is domiciled.

. § 2501. Appeals by employees to the board
[[Image here]]
E.
[[Image here]]
(3) This hearing shall be confined to the determination of whether the decision made by the board was made in good faith for cause under the provisions of this Part. No appeal to the count shall be taken except upon these grounds ...

. § 2501. Appeals by employees to the board
[[Image here]]
C. (1) After the investigation provided for in subsection B of this Section, the board may, if the evidence is conclusive, affirm the action of the appointing authority. If they find that the action was not taken in good faith for cause under the provisions of this Part, the board shall order the immediate reinstatement or reemployment of such person in the office, place, position, or employment from which he was removed, suspended, demoted, or discharged, which reinstatement shall, if the board so provides, be retroactive and entitle him to his regular pay from the time of removal, suspension, demotion, discharge, or other disciplinary action. The board may modify the order of removal, suspension, demotion, discharge, or other disciplinary action by directing a suspension without pay, for a given period.... [emphasis added]

. Id.

. The letter read as follows:
January 19, 1983
Dr. Bipin A. Turakhia
1525 Doctors Drive
Bossier City, LA
Dear Dr. Turakhia:
Sergeant Billy Spencer has been on medical leave of absence since August 10, 1982, due to an injury sustained while on duty on August 8, 1982.
Attached herewith are medical reports from his personal physician which are pertinent to his condition.
*628 After examining this patient, please advise us if he is capable of successfully completing a 12-month premotional working test period which will commence immediately. Please note that his work involves situations which may call for strenuous exercise, and the possibility is always there for possible re-injury.
As time is crucial in this matter, I would appreciate your phoning me at my office as soon after the examination as possible. My phone number is 124-8621. I would also appreciate a follow-up letter on his condition to be placed in his permanent file.
Thank you for your assistance in this respect.
Sincerely,
s/Bobby R. Gauthier Bobby R. Gauthier
Chief of Police
BRG/KD

. § 2501. Appeals by employees to the board
B. ...
(2) Both the employee and the appointed authority shall be afforded an opportunity to appear before the board, either in person or with counsel, and present evidence to show that the action was or was not taken in good faith for cause as set forth in the provisions of this Part....