GAIDRY, J.
| ¡.The plaintiff-appellant, William Narret-to (Lt. Narretto),[1] and the defendant-appellant, the City of Hammond (the City), each appeal the judgment of the 21st Judicial District Court on a petition for judicial review of the action of the Hammond Municipal Fire and Police Civil Service Board (the Board). For the reasons stated below, we affirm the trial court’s judgment, amend it in part, and remand this matter to the Board for any further proceedings consistent with this opinion.
FACTS AND PRIOR PROCEEDINGS
Lt. Narretto is a classified employee of the City and an officer in the Hammond Police Department. On August 7,1999, he was present in the vicinity of the booking room of the Hammond Police Station when an incident occurred in which a handcuffed prisoner, Tyrell Cyprian, was struck by another police officer, Dominick Cutí, in the booking room. As a result of that incident, and related circumstances which occurred shortly thereafter, the prisoner instituted a complaint, resulting in an investigation by Lt. Salvador Mike of the police department’s internal affairs unit. The investigation implicated a number of police officers present at the time of the incident, including Lt. Narretto, who had supervisory authority over the officer who struck the prisoner.
Lt. Narretto was first placed under investigation on August 17, 1999, following the initiátion of investigation of the officer who struck the prisoner on August 13, 1999. Lt. Mike prepared a detailed, narrative internal affairs | -¡report for each officer implicated, summarizing the evidence obtained through interviews with witnesses, including other officers and prisoners, as well as police department telephone recordings and the prisoner’s hospital records. The report related to Lt. Narretto was issued on August 24, 1999, and concluded that there was possible merit for finding violation of three standards or policies of the police department.[2]
*1094 On August 30, 1999, Police Chief Roddy Devall met with Lt. Narretto and held a pre-disciplinary hearing, at which time he verbally advised Lt. Narretto of the factual basis of the charges against him. Lt. Nar-retto was shown a written investigative notification form advising him that he was the subject of proposed discipline. He signed the form, acknowledging that he had read and understood its contents, and that his supervisor explained it to him. He was also shown and signed a written disciplinary report form, similar in format to the investigative notification form, which set forth the finding that he had violated the department standards relating to “neglect of duty” and “presenting statements or facts.” In both forms, the section ^providing for the description of the incident or violation contained only the terse reference, “see i.a. [internal affairs] report 99-08-01.” The evidence is inconsistent as to whether Lt. Narretto was provided with copies of the investigative notification and disciplinary report forms prior to the imposition of the discipline on September 20, 1999. Lt. Narretto denied being so provided with copies of the forms, and Chief Devall’s testimony on that point was equivocal at best. There is nothing in the record which actually controverts Lt. Narret-to’s testimony that he was never provided with a copy of the internal affairs report, although Chief Devall stated that its contents were reviewed and discussed with him at the pre-disciplinary hearing on August 30,1999.
Upon the conclusion of the internal affairs investigation, a written disciplinary report was issued, and Mayor Louis Tallo imposed the disciplinary penalty of a suspension of 240 hours upon Lt. Narretto by letter dated September 20, 1999. Although the letter referenced a number of violations of designated sections of the City’s Personnel Policies and Procedures Manual and its Police Department Standards Manual, the stated basis of the suspension was Lt. Narretto’s “failure to act in a leadership capacity.”[3] No further description of the factual circumstances of that offense was provided in the letter, and the suspension was effective that date.
Lt. Narretto appealed the disciplinary action to the Board, but the hearing was continued on a number of occasions for various reasons. The |fiBoard eventually heard the case over the course of two separate hearings conducted on February 21 and August 15, 2001, during which extensive testimony and documentary evidence were taken. On August 16, 2001, the Board voted to reverse the suspension of 240 hours as unjustified,, but also voted to uphold the disciplinary action on the ground that Lt. Narretto improperly allowed Officer Cuti to transport the prisoner whom he had struck earlier to the hospital.
*1095 On September 10, 2001, Lt. Narretto filed his petition for judicial review of the Board’s decision, contending, among other things, that the Board erred in finding cause for his suspension, based upon inadequate statutory notice by the City and in basing its suspension upon a factual ground not referenced in the notice. In its separate petition for judicial review, filed on September 13, 2001, the City alleged that the Board’s decision to modify the basis of the disciplinary action and to reduce the penalty imposed was unjustified and unauthorized by law, and prayed that the City’s original disciplinary action be reinstated.
The trial court heard the matter on June 17, 2002. On July 31, 2002, the trial court issued its written reasons for judgment, finding that the City failed to provide the written notice with “specific facts upon which the charges are made,” as required by La. R.S. 33:2500(D), and that it could not determine whether the Board imposed disciplinary action on grounds not considered by the City in light of the City’s deficient written notice. By judgment signed on August 29, 2002, the trial court vacated the Board’s proceedings and remanded the matter to the Board for further proceedings.
The opposing parties now appeal the trial court’s judgment.[4]
I ^ASSIGNMENTS OF ERROR
Lt. Narretto assigns as error the trial court’s failure to declare the disciplinary action void ab initio for the City’s failure to afford him due process under the principles enunciated in Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), and for the City’s failure to provide him written notice as required by La. R.S. 33:2560. He further assigns as error the trial court’s remand of the case to the Board for further proceedings, its failure to order the payment of all back wages and benefits, and its failure to award attorney’s fees pursuant to La. R.S. 33:2501.1.
As appellant, the City assigns as error the trial court’s failure to find the Board’s action in modifying the suspension to be arbitrary and capricious and its failure to reinstate the City’s original suspension, rather than remanding the case to the Board. It further assigns as error the trial court’s judgment vacating the Board’s proceedings based upon the City’s failure to comply with La. R.S. 33:2500(D).
DISCUSSION
The prime objectives and purposes of the constitutionally created civil service system are to ensure that non-policymaking, i.e., “classified,” city employees are (1) competitively selected on the basis .of merit, free from political influence, and (2) protected from discriminatory dismissal or treatment for religious or political reasons. Civil Service Commission of City of New Orleans v. City of New Orleans, 02-1812, p. 6 (La.9/9/03), 854 So.2d 322, 328. The civil service law applicable to classified employees of 1 .¡municipalities with populations between 13,000 and 250,000 is set forth in La. R.S. 33:2471, et seq.[5]
A classified employee may appeal an adverse decision of the civil service board to the district court of the board’s domicile. La. R.S. 33:2501(E). The appeal to the district court is “confined to the determination of whether the decision *1096 made by the board was made in good faith for cause” only. Id. The district court should accord deference to the board’s factual conclusions and must not overturn them unless they are manifestly erroneous. Moore, v. Ware, 01-3341, p. 7 (La.2/25/03), 839 So.2d 940, 946. Appellate court review of those factual findings is similarly limited to review for manifest error. Moore, 01-3341 at pp. 7-8, 839 So.2d at 946. The board’s conclusions as to whether the disciplinary action is based on legal cause and commensurate with the infraction, however, is subject to review under the abuse of discretion standard. Evans v. DeRidder Municipal Fire and Police Civil Service Board, 01-2466, p. 5 (La.4/3/02), 815 So.2d 61, 66, cert. denied, 537 U.S. 1108, 123 S.Ct. 884, 154 L.Ed.2d 779 (2003).
In the Loudermill case, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the United States Supreme Court concluded that a public employee dismissible only for cause, such as a tenured employee, is generally entitled to at least a limited hearing prior to his termination in order to satisfy procedural due process, in order to provide the employee an opportunity to tell his side of the story, to be followed by a more comprehensive post-termination hearing. In Gilbert v. Homar, 520 U.S. 924, 930, 117 S.Ct. 1807, 1812, 138 L.Ed.2d 120 (1997), the Supreme Court clarified its Loudermill holding by observing that due process is not a fixed technical [sconcept but rather a flexible concept providing “such procedural protections as the particular situation demands,” and does not always require a hearing prior to the initial deprivation of a property interest. In Gilbert, the Supreme Court assumed, without actually deciding, that a suspension without pay may in some cases infringe upon a protected property interest. It held that in determining what process may be due in a given situation, the length and the finality of the deprivation must be considered. Gilbert, 520 U.S. at 932, 117 S.Ct. at 1813.
Article 10, § 8(A) of the Louisiana Constitution provides that a classified employee may not be “subjected to disciplinary action except for cause expressed in writing.” Loudermill does not require that the pre-deprivation notice be in writing. Loudermill, 470 U.S. at 546, 105 S.Ct at 1495. This court has previously held that a Loudermill pre-termination hearing does not constitute the “disciplinary action” contemplated by the constitutional article; rather, it constitutes a “preliminary step in a disciplinary action.” Brown v. Housing Authority of Hew Orleans, 590 So.2d 1258, 1260 (La.App. 1st Cir.1991). Thus, we find no merit in Lt. Narretto’s first assignment of error.
In its reasons for judgment, the district court cited La. R.S. 33:2500(D) as applicable to the present fact situation. Lt. Narretto mistakenly cites La. R.S. 33:2560(D) as the actual statutory section applicable. The statutes address the same general subject matter, but apply respectively to political subdivisions of different population sizes.[6] Nevertheless, Paragraph D of both statutes is identical in language, and provides as follows:
|9P. In every case of corrective or disciplinary action taken against a regular employee of the classified service, the appointing authority shall furnish the employee and the board a■ statement in writing of the action and the complete reasons therefor. (Emphasis supplied.)
As the language quoted above is identical in both statutes and they are in pari materia, they should be interpreted with reference to each other, and jurisprudence interpretative of La. R.S. 33:2560(D) is *1097 relevant and persuasive in interpretation of La. R.S. 33:2500(D). See La. C.C. art. 13; Phares v. Gill, 96-2296, p. 5 (La.App. 1st Cir.6/20/97), 697 So.2d 35, 37. The purpose of La. R.S. 33:2560(D) is to afford due process to the employee so that he can know with reasonable particularity the facts and circumstances he might be called upon to rebut in case the employer makes out a prima facie case. Seaman v. City of Leesville, 96-0884 (La.5/10/96), 672 So.2d 914. We have held that the same purpose underlies La. R.S. 33:2500(D). Dumez v. Houma Municipal Fire & Police Civil Service Board, 365 So.2d 603, 607 (La.App. 1st Cir.1978).
In the case of Powell v. City of Winnfield Fire and Police Civil Service Board, 370 So.2d 109 (La.App. 2nd Cir.1979), the plaintiff, a municipal policeman in classified service, was discharged on grounds that he neglected his duty. The chief of police had earlier conducted an investigation, suspending the plaintiff pending its completion, and later issued a report to the city’s mayor and aldermen. The alderman adopted a resolution discharging the plaintiff for “neglect of duty” based upon “many instances wherein [he] slept on duty” and “departed his duty station for long periods of time,” citing the chiefs report. A copy of the chiefs report was never furnished to the plaintiff or to the civil service board, to whom he appealed his discharge. The civil service board affirmed the discharge, and the trial court upheld its decision. Discussing the provisions of La. R.S. | in33:2560, the appellate court noted that La. R.S. 33:2560(A) sets forth fifteen authorized reasons for discipline, some of which are specific (such as (8) conviction of a felony), and some of which are broad (such as (1) failure to perform the duties of his position in a satisfactory manner). The court concluded:
Thus where the section states in Part A that an employee may be discharged for a broad “reason”, it logically and reasonably follows that the “complete reasons” required to be given in writing by Part D of the section contemplates that the broad reason shall be made specific (or detailed or complete) as to the circumstances of the employee’s failure (or neglect) to perform the duties of a particular position.
Id. at 112. The appellate court noted that the aldermen’s resolution “borders upon, but does not achieve, specificity.” Id. at 113. It therefore reversed the trial court’s judgment and remanded the case to the civil service board for further proceedings.
The rationale of Powell is persuasive on the issue of adequacy of notice here, particularly' given the near identity of language of La. R.S. 33:2500 and La. R.S. 33:2560. Additionally, as this court observed in Pailet v. Office of Health Services and Environmental Quality, 387 So.2d 1274, 1277 (La.App. 1st Cir.1980), numerous cases in our jurisprudence repeat the principle that a classified employee who is the subject of discipline ‘'must be provided with the details of his alleged offense.” We further explained there that “the notice provided must not be so short of details as not to amount to notice,” and that “[e]ircumstances giving rise to the action should be alleged in detail.” Id. The purpose of the requirement for “detailed reasons” or “complete reasons” for the action is to give the employee a fair and clear statement of the misconduct of which he is accused including, whenever pertinent, times, dates, places, and amounts, if monies are alleged to have been unjustly secured and misappropriated. Lanclos v. City of Opelousas, Opelousas Municipal Civil Service Commission, 486 So.2d 1149, 1153 (La.App. 3rd Cir.1986), citing Hays v. Louisiana Wild Life and Fisheries Commission, 243 La. 278, 289, 143 So.2d 71, 74 (1962).
*1098 Here, although the internal affairs report is in the record, there is no evidence that Lt. Narretto was provided a copy of that report prior to the imposition of the discipline. There is likewise no evidence that Lt. Narretto was advised in writing of the specific facts constituting his violation of the general rule which was the subject of the charge. The disciplinary report’s bare reference to the internal affairs report itself, without reference to specific factual circumstances recited therein, simply fails to supply the detail required by the statute, which goes beyond the minimum requirements of Loudermill.
By prohibiting the subjection of discipline upon a classified employee without written expression of cause, Article 10, § 8(A) of our constitution plainly requires that the written expression of cause be provided prior to or at least at the time of imposition of the discipline.[7] Although the written disciplinary report of August 30, 1999 met the temporal requirement, it failed to adequately and completely express the cause of the discipline under the standards of La. R.S. 33:2500(D). Mayor Tallo’s letter is similarly deficient in factual detail, and is confusing in defining the particular standard or standards upon which discipline was imposed, compared with the disciplinary report. Because of the penal nature of discipline authorized by La. R.S. 33:2500(A), strict compliance with the terms of the statute is only appropriate. We deem it immaterial whether or not Lt. Narretto had actual knowledge of the factual basis of the proposed discipline prior to its | ^imposition, given the plain intent of the statute, and especially considering the multiple rules alleged to have been violated through the different lapses or errors in supervisory judgment claimed. As the trial court correctly observed, it is practically impossible to objectively discern the precise factual cause of the discipline from the language of either the disciplinary report or Mayor Tallo’s letter. We accordingly affirm the judgment of the trial court, vacating the Board’s proceedings.
Our holding above is dispositive of Lt. Narretto’s second assignment of error and all assignments of error urged by the City. As to Lt. Narretto’s remaining assignments of error, we find no merit in his contention that remand to the Board for further proceedings is inappropriate. See La. R.S. 33:2500(C); City of Bossier City v. Gauthier, 512 So.2d 623, 630 (La.App. 2nd Cir.1987), writ denied, 514 So.2d 1182 (La.1987). We therefore affirm the trial court’s judgment ordering such remand.
We do find merit in Lt. Narretto’s position that under the circumstances of this case, the trial court’s judgment should have provided for his reinstatement and payment of all back pay and benefits of which he was deprived during his suspension. La. R.S. 33:2501(0(1). We will accordingly amend the trial court’s judgment, which was silent in that respect, to provide the relief sought. Athough we agree with his position that the contrary result in Dumez, 365 So.2d at 607-8, is distinguishable on its facts, we disagree, as noted above, that remand is inappropriate. This holding does not preclude imposition of disciplinary sanctions if such are found appropriate after further proceedings in accordance with law.
Finally, as to Lt. Narretto’s claim for attorney’s fees under La. R.S. 33:2501.1, we agree with the City’s contention that such an award is discretionary *1099 with the Board, and there is no showing of abuse of its Indiscretion here. We are reinforced in this conclusion by the fact that the case is to be remanded to the Board for further proceedings as it may determine are warranted, at which time Lt. Narretto is free to reurge his claim if such proceedings are resolved in his favor. We accordingly affirm the trial court’s judgment insofar as it was silent on this issue and failed to award attorney’s fees to Lt. Narretto.
DECREE
The judgment of the trial court is affirmed, but amended to reinstate the plaintiff, William Narretto, with full back pay and benefits of which he was deprived during his suspension. We further remand this matter to the Hammond Municipal Fire and Police Civil Service Board for any further investigation and disciplinary action it may deem appropriate, pursuant to the authority of La. R.S. 33:2500(0, in accordance with law and consistent with our holding herein. The costs of this appeal, amounting to the sum of $346.00, are assessed to the City of Hammond.
AFFIRMED, AMENDED IN PART, AND REMANDED TO THE HAMMOND MUNICIPAL FIRE AND POLICE CIVIL SERVICE BOARD. APPEAL OF TERRY ZAFFUTO DISMISSED AS MOOT.
GUIDRY, J., concurs in the result.

. Lt. Narretto’s surname was inadvertently misspelled in the suit record cover sheet transmitted by the trial court. As an incidental procedural matter, we take note of the fact that Sergeant Terry Zaffuto, another party to the proceeding below, separately appealed the trial court's judgment, but filed no brief in support of his appeal. The record reflects, however, that Sgt. Zaffuto moved to dismiss his answer to the City’s appeal on the grounds that the dispute between those parties had been resolved. Accordingly, we hereby dismiss Sgt. Zaffuto's appeal as moot in our decree, and issue notice in accordance with law.

. In his report, Lt. Mike explained the basis of his conclusion and the standards at issue as follows:
The standards in question are Hammond Police Department Standards Manual Chapter 2, section III, B.24-Presenting Statements or Facts; Lieutenant Narretto states he did not see Officer Cuti strike Cyprian and denied being present in the booking room during the incident. Two officers ... stated Narretto was in fact in the booking room and was in a position to see the incident, although two other witnesses stated Narretto was not in the booking room. And Chapter 2, section III, G.l-Supervisor Responsibilities; when Sergeant Zaffuto [another implicated officer and former party to this action] states that Lieutenant Narretto stood in the west doorway smoking a cigarette, which is within sight and hearing distance of the booking room, and indicated that Lieutenant Narretto initially did nothing to stop the verbal confrontation in the booking room. Sergeant Zaffuto actually stated he looked at Lieutenant Narretto as if to ask what’s going on and then Zaffuto himself had to enter the booking room to intervene. Narretto also apparently did not investigate the reason that [sic] Cyprian was transported to the hospital for his claimed injury since Narret-to stated no one told him that the injury *1094 was officer[-]inflicted. And Chapter 2, section III, B. 18-Neglect of Duty; by failing to document and/or require subordinates to document the use of force as required in Chapter 1, Section VIII, N.l & 2-Require-ment for Documentation When Force Used.

. Although the letter referenced two of the three police department standards to,which Lt. Mike referred in his report (“Supervisor Responsibilities” and "Neglect of Duty”), it also referenced two policies of the City of Hammond Personnel Policies and Procedures Manual (" 'Performance,' Chapter VI, Section 4, VI-12; Level II Offense, 1st Offense”; " 'Other Circumstances' to include failure to act in a leadership capacity [sic ], Chapter VI, Section 4, p. VI-13; Level II Offense, 1st Offense.”) There is no documentary evidence in the record before us which relates the stated violation of “failure to act in a leadership capacity” to a specific set of factual circumstances constituting cause for discipline.

. See n. 1, supra.

. The City of Hammond’s population, according to the 1990 federal census, was 15,811. The 2000 federal census listed its population at 17,639.

. See n. 5, supra, and related text, infra.

. But cf. Baton Rouge Police Department v. Morrison, 04-0057, p. 4 (La.App. 1st Cir.2/18/05), 906 So.2d 610, 615.