PER CURIAM.
This is an appeal by the Department of Streets from a judgment of the City Civil Service Commission, reinstating 11 employees of the Department of Streets who were erroneously charged with payroll fraud, dereliction of duty, and malfeasance. The Commission provided the following excellent written reasons for their fair, equitable and proper findings which we adopt as the per curiam opinion of this Court:
*21 “Appellants, all employees of the Department of Streets, were suspended and dismissed from their positions after being charged with payroll fraud, dereliction of duty, and malfeasance in office. They have appealed from these disciplinary actions to the Commission.
“The matter was assigned by the Civil Service Commission to a Hearing Examiner pursuant to Article X, Section 12 of the Constitution of the State of Louisiana, 1974. Hearings were held in the case Boyce et al on April 16, 1986, Harrell et al on April 18,1986 and Burkart et al on April 23, 1986. The testimony presented at the hearings was transcribed by a court reporter. A copy of the transcripts and all documentary evidence have been reviewed by the three undersigned members of the Civil Service Commission.
“The facts in these cases are not in contention. It is the conclusions to be drawn from the facts that are contested.
“These three groups of employees comprised separate survey crews working within the Department of Streets. Each crew was headed by an Engineering Aide, Messrs. Boyce, Harrell and Burkart respectively. Each crew was scheduled to work from 7 a.m. until 3 p.m. In fact, the crews would start on their workday at 7 a.m. or shortly thereafter and work until they had completed their assigned tasks. At that time, all members of the crew other than the crew chief, the Engineering Aide, would be free to go home where they were expected to remain “on call”. The time when they would be free to return home varied from day to day but was not infrequently after only three or so hours of work. On some occasions special projects required their presence on the job beyond the 3 p.m. quitting time but this was very infrequent, especially since the mid-1970’s. After the crews disbanded, the crew chiefs would go to City Hall, or in some cases, to their own homes to work on reports, drawings etc. and then turn in their work at City Hall, make telephone calls and attend meetings that sometimes lasted well beyond the 3 p.m. quitting time and as late as 5 p.m. or later.
“All members of the crews were occasionally called upon to leave home after they had completed their assigned work for the day and return to a job site when the need arose.
“The foregoing arrangement was described by the testimony of virtually every witness to appear in the three hearings. On the basis of these facts, the appointing authority concluded the appellants were guilty of payroll fraud and the other offenses. The appointing authority’s theory was that whatever might have been the practice in the Department in the past, with the adoption of the RAMS cards for recording employee working hours several years, each employee was obligated to report his actual working time. Appellants listed eight hours per day despite the fact that they left normally after only a fraction of that time.
“We conclude that the appointing authority failed to carry the burden of proof in this case and appellants’ appeals must be upheld. Our conclusions are based on the following: (1) The practice described above has been followed in the Department for at least 33 years. Both current and retired employees testified that this was the case and that ‘everybody knew it’. (2) At the time they completed their assigned work tasks, the appellants had nothing more to do and nowhere to go. They had no offices, no home base or place to operate from; nothing more was expected from them. (3) Several appellants and retired employees of the Department testified that supervisors in the Department were fully aware of the practices described and not only condoned them, but instructed the appellants and others to continue them. On one occasion a former Director of the Department changed the policy and found a place for the crew members to go after the completion of their tasks, but after not more than two months, things returned to the prior practice. (4) None of the supervisors directly up on the chain of command testified to contradict the foregoing. (5) On at least one occasion one of the crew chiefs complained to a supervisor about this work pattern to no avail. (6) When the RAMS system was started, the appellants *22 were instructed to report that they had worked eight hours whatever the time spent on duty.
“Several of the appellants were long time employees of the City. All had good employment records and several had received commendations regarding their service. It is evident that they fit into the pattern of how things were done in the Department, and if they asked questions, were told by their supervisors that this system was appropriate.
“Apparently until the mid-1970’s, the crew members were kept busier and would leave for home much later in the day than since that time. At some point the City contracted with a civil engineering firm to perform some of the duties the crews had been carrying out. This reduced the work available to the survey crews but no reduction in the number or size of the work crews, or at least not a sufficient reduction was effected to keep the existing crews occupied. They therefore went home earlier and earlier. The appellants testified that they considered themselves on duty when at home awaiting a call.
“The work system described above is actually less objectionable that [sic] it might appear at first blush. Apparently the work performed by the crews was a direct factor of the amount of construction going on in the city and fluctuated a great deal. It was crucial to the efficient completion of the projects that the survey crews be available when needed. It was the decrease in the amount of work available to the crews that led to their going home earlier and earlier. If the system then became inefficient and improper, the responsibility to change it was that of the management of the Department. It is abundantly clear from the record that, including at least one Director, some of the managers of the Department, knew of and condoned these practices. To now claim that the fairly low echelon employees who are the appellants in this case acted improperly by following the express orders of their superiors is grossly unfair. They acted in good faith and on the basis of their supervisors’ express instructions. To claim, as the appointing authority does now, that there was no written policy condoning these practices or that the written policies of the Department, which did not find their way into the hands of all employees, can be interpreted as precluding such practices is ridiculous. Absent some clear dereliction of moral standards, employees, especially those not high on the managerial ranks of the Department, do what they are told by their supervisors. The appellants were told that they were considered on duty until 3 p.m. and should be available for work until that time. They, did hold themselves ready and were, on occasion, called back to work. When they did work beyond 3 p.m., they did not ask for or receive overtime pay since they understood that the rules under which they worked required the job to be done whatever hours were involved.
“Our conclusion is that these appellants did not act improperly. They are in no way guilty of the serious charges made against them. They should be reinstated with full back pay. Our action here should not be construed as approving any practice which compensated employees for periods when they are not at work. Here, the wrong persons were disciplined.
“For the foregoing reasons, it is the order of the Commission that the suspensions and dismissals of appellants Boyce, Beh-rens, Lehrmann, Mullen, Harrell, Rich, Vi-coli, Shamp, Burkart, Greco and Weaver be revoked. They are to be reinstated with full back pay and emoluments. The back pay awards are to be reduced by any wages earned by appellants during the period for which back pay is restored.
“Appellants are instructed to contact the Streets Department immediately and inform them of their desire and availability to return to work. If it is their desire to return to work, the Streets Department is to effect their reinstatement as quickly as the process allows.”
AFFIRMED.
KLEES, J., concurs in the result.