PLOTKIN, Judge.
The New Orleans Department of Streets appeals a Civil Service Commission decision which reversed disciplinary actions against Mark Tsai, Russell Moran" and Jack New. The Department acted on an Office of Municipal Investigation [OMI] inquiry involving payroll fraud, dereliction of duty and malfeasance in office.
The Civil Service Commission summarized the Department’s work practices[1] as follows:
1. Survey crews were given work assignments that they performed.
2. When they completed their work the surveyors had no place to go but home.
3. Survey crews were told that they were on call until the end of an eight hour work day. On occasion they were called back to work to perform needed work.
4. The number of hours actually worked varied a great deal from time to time.
5. After the City began to contract out more of the work traditionally performed by the survey crews, no effort was made to reduce the work force within the Department. The crew therefore had less and less to do.
6. The practice of the survey crews of going home after a few hours of work was well known in the Department at every level.
Mark Tsai, a civil engineer III and supervisor, was suspended for three days and demoted to civil engineer II for dereliction of duty in his failure to supervise properly survey crew members and to discover that the workers were not working eight hours daily. Russell Moran, Streets Construction Supervisor, was suspended for three days and then dismissed due to payroll fraud, i.e., reporting himself and his survey crew as working eight hour days when they worked considerably less. Jack New, a survey crew member, resigned from the Department after the OMI investigation, but prior to any disciplinary action. The Department determined that New was not entitled to terminal leave pay (annual or sick) since he had not worked eight hours daily in order to accumulate the leave.
The responsibility of the supervisors, Tsai and Moran, is different from that of crew member New. (All parties stipulated that the field survey crews work on an average of two hours per day.) Jack New, age 87 and a thirty-three year city field worker, confessed that he never worked past noon any day and submitted false time cards for eight hours daily. However, this court in Boyce v. Dept. of Streets, 518 So.2d 20 (La.App. 4th Cir.1987), declined to reverse the Civil Service Commission which held that the members of the survey crews, although improper in their work practices, should not be disciplined because:
*420 (1) (t)he practice described above has been followed in the Department for at least 33 years. Both current and retired employees testified that this was the case and that ‘everybody knew it’. (2) At the time they completed their assigned work tasks, the appellants had nothing more to do and nowhere to go. They had no offices, no home base or place to operate from; nothing more was expected from them. (3) Several appellants and retired employees of the Department testified that supervisors in the Department were fully aware of the practices described and not only condoned them, but instructed the appellants and others to continue them. On one occasion a former Director of the Department changed the policy and found a place for the crew members to go after the completion of their tasks, but after not more than two months, things returned to the prior practice. (4) None of the supervisors directly up on the chain of command testified to contradict the foregoing. (5) On at least one occasion one of the crew chiefs complained to a supervisor about this work pattern to no avail. (6) When the RAMS system was started, the appellants were instructed to report that they had worked eight hours whatever the time spent on duty.[2]
It would be inconsistent and unfair to punish only New when his co-workers were not deprived of benefits for similiar conduct.
Even though Jack New resigned and was not a city employee, withholding his terminal pay was construed as a disciplinary action subject to appeal. Since withholding the pay was based on wrongdoing that would normally entitle an employee to an appeal if made prior to resignation, the Commission correctly concluded New was entitled to an appeal. This court does not condone denying a wronged individual an appeal without considering attendant circumstances. See Peterson v. Department of Streets, 369 So.2d 235 (La.App. 4th Cir.1979), writ denied 371 So.2d 1344 (La.1979).
The Commission ordered New to be paid accrued back leave and stated:
We conclude as we did with regard to the appellants in the earlier cases that appellant New cannot be held responsible for following the practices of the Department of Streets with regard to work schedules and payroll record keeping.
This court agrees with the results the Commission reached as to Mr. New.
A permanent classified city civil service employee cannot be subjected to disciplinary action except for cause expressed in writing. He may appeal to the City Civil Service Commission and the appointing authority bears the burden of proof on appeal. La. Const. Art. X, § 8(A); City Civil Service Commission Rule II, Section 4.4. On appellate review the Commission’s decision is subject to review on questions of law or fact. La. Const. Art. X, § 12(B).
This Court will not reverse or modify the Commission’s findings of fact or the disciplinary action unless it is clearly wrong, arbitrary or capricious. Walters v. Department of Police of New Orleans, 454 So.2d 106 (La.1984).
Mark Tsai, a civil enginereer III for five years, was the supervisor of one field survey crew. His duties, which he authorized, included daily direct field inspection of the work crew under his jurisdiction and approval of weekly time payroll cards. Tsai admitted he failed to field check the daily work performed by his survey crew and he approved their false time cards as submitted to him, without verification. Tsai should have known that his field crew were not working and were guilty of malfeasance and payroll fraud. The only defense Tsai offered to justify his dereliction of duty, was the lack of transportation or mileage reimbursement. This defense was rebutted by Urban Pffefferle, his supervisor, who stated that the street department had a car assigned to it, and the car was available most of the time on request. Tsai made no effort to requisition the department car or to complain abut the inaccessibility of transportation.
*421 Russell Moran, a street construction supervisor, was under the supervision of Mark Tsai and supervised Michael Boyce’s field survey crew. Moran testified that he falsely manufactured and assigned to Boyce work he knew would not require eight hours daily. Boyce would then submit a fictitious completion report to Moran who referred it to a city draftsman for completion. Moran admitted that he never field inspected his subordinates work product, never instructed them to work a full eight hour day, and he confessed that he knew that his field crew only worked one to two hours per day. He acknowledged that he knowingly signed and submitted to the City false payroll cards for his crew. Furthermore he actively participated for years in this custom and practice of malfea-sence, fraud and cover-up. Moran defends his conduct on the grounds that the practice of not working and filing false time cards existed prior to and subsequent to his employment in the Department of Streets and was tacitly approved by the Department Director. There is not a scintilla of creditable evidence in the record to support this conclusion. On the contrary the evidence preponderates that no authority higher then these appellants knew of the practice or were responsible for knowing what was occurring in the field.
As to Tsai and Moran who were supervisors, the Commission concluded:
With regard to appellant Tsai and Moran, they are somewhat higher up in the management hierachy [sic] than the employees whose cases the Commission has already considered, yet we believe that they too, cannot be held responsible for the policies pursued by the Department. The evidence is clear that the payroll practices the Department complained of have been in effect for over 33 years. The testimony is contradicted that successive directors of the Department have known of the practices and not taken effective steps to end them. The setting of policy concerning contracting out of needed city services, the abolition of employee positions and the manner in which employees work when there is no place for them to go after they have completed their field assignments are all matters for management at a higher level than the positions occupied by appellants Tsai and Moran. The record establishes that both appellants put in long hours themselves, frequently with poor support, yet they are being held responsible for conditions over which they had little or no control and that were in existence long before they assumed their positions. The facts concerning the hours of work of the survey crews are unfortunate and should certainly have been dealt with differently, yet we conclude that they do not support disciplinary actions against any of the individuals whose cases have come before the Commission. The fact that the Department has followed poor policy does not translate into disciplinary actions against lower echelon employees or middle echelon administrators. The responsibility belongs to the director.
Legal cause for disciplinary action against a permanent city classified civil servant exists when the complained of conduct impairs the efficiency of the public service and bears a real and substantial relation to its efficient and orderly operation. Lombas v. Department of Police, 467 So.2d 1273 (La.App. 4th Cir.1985), writ denied 470 So.2d 120 (La.1985); Newman v. Department of Fire, 425 So.2d 753 (La.1983).
There is no question that the work practices of Mark Tsai and Russell Moran greatly affected the Department’s efficient operation. The demotion of Tsai was justified by his actions in failing to supervise properly his men and signing false payroll cards. Working a few hours and being paid for eight hours cannot be excused because of an incompetent Department or Director. The Department’s attempt to rectify past wrongs is clearly justified. The Commission was arbitrary in its decision to reverse the disciplinary actions under these extraordinary circumstances.
Nor can we brush aside the admitted fraud committed by these two employees. We find the Department had legal cause to take disciplinary action, carried its burden *422 of proof, and the punishment is commensurate with the charges.
The Commission’s decision is affirmed as to Jack New; it is reversed as to Mark Tsai and Russell Moran and the Department's actions are reinstated as to those two parties.
REVERSED IN PART.
AFFIRMED IN PART.
BARRY, J., dissents with reasons.

. These conclusions were first reached by the Commission in 11 consolidated appeals involving the members of the survey crews in July, 1986. A copy of that opinion was attached to this appeal.

. We do not adopt the Civil Service Commission’s conclusions in this case.